[No. 3999. Decided December 10, 1901.]

NICK NELSON, *Respondent,* v. S. WILLEY STEAMSHIP &
NAVIGATION COMPANY, *Appellant.*

CONTRIBUTORY NEGLIGENCE — WHEN QUESTION FOR JURY.

The question of contributory negligence is properly one for the jury, where reasonable men may fairly arrive at different conclusions from the state of facts proven.

MASTER AND SERVANT — ACTION BY SERVANT FOR PERSONAL IN-
JURIES — VARIANCE.

In an action for negligence in which the complaint alleges that "the first mate gave the order to the deck hands to take in the gang plank; that before said deck hands could get to the sides of said gang plank to lower the same to the deck as was customary, without warning said officer untied the rope which held said gang plank to the dock," causing it to slide and occasion the injury complained of, evidence that the captain blew a short blast of the whistle, which means to take in the gang plank, and that the mate, without any warning, let the plank go so that it came down on plaintiff, constitutes but an immaterial variance, since the order was given the mate to give to the crew, and was so understood and acted upon by them.

SAME — VICE PRINCIPAL ACTING AS FELLOW SERVANT — LIABILITY OF
MASTER FOR NEGLIGENCE.

The failure of a vice principal to warn the servant of impending danger known to him, but not to the servant, will render the master liable for injuries resulting in consequence, though the vice principal at the time may be performing the duty of a fellow servant instead of a duty pertaining to his employment as a vice principal.

SAME — INSTRUCTIONS.

In an action by a deck hand to recover for injuries received by reason of the negligence of the first mate of a vessel, an instruction that the mate was a vice principal and not a fellow servant with the plaintiff, was proper, where it was alleged and admitted by the pleadings that the mate was authorized by defendant to hire and discharge the deck hands, with authority to superintend and direct them in and about the work for which they were employed.

Appeal from Superior Court, King County.—Hon. WILLIAM R. BELL, Judge. Affirmed.

*George C. Israel,* for appellant.

*Bogle & Richardson,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—On June 18, 1900, appellant was a common carrier conducting a line of steamers between Olympia and Seattle, in this state. Respondent was an ordinary deck hand on board the "City of Aberdeen," one of appellant's steamers. This boat carried a gangplank weighing some eight or nine hundred pounds, for use in unloading freight, etc. While this steamer was lying at her dock in Olympia on the date mentioned, the gangplank was standing at an angle of forty-five or fifty degrees, connecting the steamer with her dock. When the boat was about ready to start on the trip from Olympia to Seattle, the captain gave a short blast of the steamer's whistle, which was a signal to "take in the gangplank and let go the lines." At the blast from this whistle it was the duty of the deck hands to take position around the gangplank preparatory to taking it on the boat. It was the duty of the mate (an officer on board said boat) to direct the deck hands in and about this work. It had been raining some on this day, and the deck of the steamer was wet and slippery. There were four deck hands on board, at different places upon the vessel. Upon hearing the blast of the whistle, all proceeded hastily forward in obedience to their duties. The mate was on the dock, and proceeded to loosen the end of the gangplank fastened to the dock. As the mate let go the gangplank, before respondent had an opportunity to take his position, and without warning to him, the plank came sliding in on the deck, by reason

of being freed by the mate, and caught the respondent, breaking his leg. Upon this state of facts, suit was brought. Upon the trial a jury awarded the respondent damages in the sum of $764.50. From a judgment therefor, this appeal is prosecuted.

The evidence is conflicting upon the point whether the gangplank was loosened by the mate, and came sliding in on the deck without warning to respondent in time to escape it, or whether, after the proper warning and order had been given by the mate, the other three deck hands gave the plank a pull, and thereby caused the same to slide in upon respondent. Since the jury, under the instructions of the court, must have found for the appellant under the latter state of facts, we assume the former to have been established at the trial. Appellant claims (1) that plaintiff's evidence shows contributory negligence on his part; (2) that there was a variance between the proof and the allegations of the complaint with reference to negligence; (3) that the negligence shown is of a fellow servant; and (4) error in the instructions. Plaintiff's allegation of negligence in his complaint is as follows:

"That on said day, and while working in the capacity of deck hand for said defendant upon defendant's said steamer, the 'City of Aberdeen,' then lying at the dock at Olympia, Washington, said first mate gave the order to the deck hands to take in the gangplank; that plaintiff, together with the other deck hands, immediately started to obey said order of said officer; that before said deck hands could get to the sides of said gangplank and lower the same to the deck, as was customary when said order was given, and without warning to the plaintiff, or without any warning whatever, said officer untied the rope which held said gangplank to said dock, whereupon said gangplank with great force and velocity slid across the deck of said steamboat, and struck plaintiff and fractured

both bones of his right leg between the ankle and knee.
.   .   .    That it is the duty of said deck hands on said
steamboat to take in the gangplank when ordered by said
first mate so to do; and that, when injured as above set
out, plaintiff was working in the scope of his employ-
ment."

The testimony of the plaintiff himself in support of
this allegation is substantially as follows:

"We were lying at the dock, unloading and discharging
freight and taking in freight, and we were going to leave
there, and I was busy stowing away some freight, and they
blowed a short whistle; that means to take in the plank,
let go the lines, etc.   I ran out, and there was two or three
there ahead of me, and when I came out he [the mate]
was just ready to let go of the plank; and I stopped for
a moment to see what he is going to do about it, and just
as I stopped there for a second, why, he let the plank go.
The plank came down right across the deck.   When I saw
the plank coming, I ran—ran for the stairway—small
stairway.   There is one on each side of the boat, and I
wasn't quick enough to get up the stairway—got up with
one foot, the other one he caught and broke him.   There
was a whistle blown; it was blown up in the pilot house.
It was a signal to take in the plank and let go the lines.
I know who blew the whistle.   It was the captain.   He
was in the pilot house.   When the whistle blew the mate
was upon the dock.   I was inside the boat, down below
on the lower deck.   I was probably twenty feet from the
plank.   It was part of my duty to take in the plank.   It
was very low tide at the time.   It was raining—kind of a
bad day; the deck was very slippery—wet—everything
was wet.   The gangplank was still attached to the slip in
the dock.   I couldn't say what angle it was standing on,
but it was so steep that nobody could walk upon it.   The
gangplank was fastened in the slip by the lanyards tied to
cleats in the slip.   There was three men besides myself
on that steamer.   When the whistle is blown it is the duty
of the deck hands and stevedore to get around and get the

plank in first, and then go for the lines, and get the lines in, let go the lines, etc. They never appoint a certain man to untie or release the upper end of the gangplank from the fastenings in the slip on the dock, but generally the last man on the dock does it; something like that. Sometimes the mate sends a man up to do it, but they go of their own accord most of the time. The first mate is the officer of the steamer that has charge of these operations. The first mate had charge of it on this boat. There was no one else on the dock except the mate. It is the custom on this boat, in case of low tide, or so on, the mate always sings out, 'Easy the plank down,' or 'Lower her down,'—either way. In this case he did not give any of these directions. I looked up in the slip, and saw the mate untie the rope. I was watching for him to give orders to get around the plank and lift her down. I was right at the end of the plank, looking at him untie it. I knew the plank was coming in. I didn't know he was going to drop it. I was waiting for him to give the order to go up and lower it down. I didn't dream he was going to let it go."

There were other witnesses to the same effect. While there may arise from this evidence the inference that the plaintiff contributed to the injury by reason of waiting for the order, yet this inference would depend upon the length of time he waited, and whether any such inference arises or not depends upon the construction given his language.

"When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or the other of those conclusions has been drawn by the jury. The inferences to be drawn from the evidence must either be certain and incontrovertible, or they cannot be decided upon by the court." *Detroit & M. R. R. Co. v. Van Steinburg*, 17 Mich. 99.

This question was, under the evidence, properly left to the jury.

2. The allegation of negligence is that "the first mate gave the order to the deck hands to take in the gangplank; . . . that before said deck hands could get to the sides of said gangplank to lower the same to the deck, as was customary, . . . without warning . . . the said officer untied the rope which held the said gangplank to the deck, whereupon the same with great force," etc. The proof is that the captain blew a short blast of the whistle, which means to take in the gangplank; that the mate, without any warning, let the plank go so that it came down upon the plaintiff, etc. Certainly this is not a material variance, under § 4949, Bal. Code; nor a failure of proof as defined by § 4951. Whether the captain gave the order to the mate, and the mate to the crew, or whether the crew took the order directly from the whistle, is of no consequence. All evidently understood what was meant when the whistle was sounded, and the crew, no doubt, assumed that the mate would do his duty. Whether the mate actually gave the order or not, the fact is still the same,— that the order was given him to give to the crew, and was understood and acted upon by the crew.

3. Appellant argues that even if the mate of the vessel is, in law, a vice principal, still since the injury complained of was caused by such vice principal performing a duty not pertaining to his employment as such, but one appertaining and belonging to a deck hand, that he was for that reason a fellow servant in regard to that employment. The rule contended for cannot apply here. It was not the negligence of a deck hand which caused the injury, because the negligence which caused the injury was not the mere act of untying the gangplank, or of let-

ting it fall upon the deck of the vessel, but was the failure to warn respondent of impending danger known to the master, and not to the servant. It was necessary in the operation of the boat to loosen the gangplank and take the same aboard, so that the vessel might proceed upon her voyage. It was the duty of the deck hands to do this work, but it was the duty of the master to say when and how this should be done, and direct the deck hands therein. If the principal had taken a deck hand, a fellow servant of plaintiff, on the dock, and wilfully or carelessly directed this fellow servant to drop a gangplank upon the deck of the vessel, where the respondent and other deck hands were, and where their duty called them, and where, without knowledge or warning, the gangplank was precipitated upon them and caused injury, can it be said that because the injury was done by a fellow servant, who obeyed the order of a principal, the principal would not be liable? Surely not; because the injury in that event would be caused by the negligent or wilful order of the master, and his failure to perform a duty, viz., to warn his servants of impending danger. So it is here. The negligence complained of is that the mate, by *not warning plaintiff* that he was intending to drop the gangplank, either by his own hand or by the hand of another, upon the deck where respondent was, and where it was his duty to be, caused the injury. This was not the act of a fellow servant, but the act of the principal. The mate, under such circumstances, was not a fellow servant with the respondent. Shearman & Redfield, Negligence (5th ed.), § 233; *Grand Trunk Ry. Co. v. Cummings,* 106 U. S. 700 (1 Sup. Ct. 493); *Metropolitan, etc., R. R. Co. v. Skola,* 183 Ill. 454 (56 N. E. 171, 75 Am. St. Rep. 120).

4. It is claimed that the court erred in instructing the jury that the mate was a vice principal, and not a fellow servant with the respondent, and that this instruction was an invasion of the province of the jury. It is alleged in the complaint and admitted by the answer, "that such officer was authorized by said defendant to hire and discharge the deck hands on said boat, with authority to superintend and direct said deck hands in and about the work for which they were employed. The evidence as to the authority of the mate was not disputed. It was therefore conceded that the mate had general supervision over the deck hands, with power to employ and discharge them, and to direct their movements. This, therefore, became a question of law for the court, and not of fact for the jury. The instruction was proper.

Several other errors are argued by appellant, arising out of instructions of the court to the jury; but these errors are based on principles already considered herein, and it is not necessary to further discuss them. The instructions, as a whole, fairly state the law involved in this case, and are based upon the evidence.

We find no error in the record. The case will be affirmed.

REAVIS, C. J., and DUNBAR, HADLEY, FULLERTON, ANDERS and WHITE, JJ., concur.