(No. 4952.  Decided August 8, 1905.)

WILLIAM O'BRIEN, *Appellant,* v. PAGE LUMBER COMPANY, *Respondent.*[1]

MASTER AND SERVANT—NEGLIGENCE—EMPLOYMENT OF INCOMPETENT FELLOW SERVANTS—NOTICE OF INCOMPETENCY.   There is no evidence upon which to submit to the jury an issue as to the negligence of the owner of a mill in employing an incompetent sawyer, where it appears that he was competent at the time he was employed; and that the employer had no knowledge of his becoming incompetent by reason of the use of intoxicating liquors, as alleged.

SAME—VICE PRINCIPAL AND FELLOW SERVANTS—SAWYER IN CONTROL OF ONE OF HIS CREW—SAFE PLACE—DUTY TO WARN OF AGENCY RENDERING PLACE UNSAFE.   A sawyer in control of a saw crew, while a fellow servant with the members of the crew in respect to their labor in working together in the common employment of converting logs into lumber, is nevertheless a vice principal as to the duty to give warning of his operation of the machinery, where it appears that the men were bound to obey his orders, that he ordered the plaintiff, a dogger, to remove a log from the head-block where it had been lodged by the operation of the nigger, a powerful machine under his control, and that, while the dogger was so engaged, with his back to the sawyer, the sawyer, without warning, operated the machinery

[1] Reported in 82 Pac. 114.

and applied the nigger to the log at a time when it was evident that the plaintiff's position would thereby be rendered extremely dangerous, and from which injury to him resulted; since after ordering the servant into a dangerous position, it was the duty of the master to keep the place safe and to warn the servant of the use of an agency by the master which would render such place unsafe; the sawyer's negligence in respect to such warning being the act of a vice principal, the peril of which was known to him as such, and unknown to the servant, and being the negligence that rendered the place unsafe.

Appeal from a judgment of the superior court for Pierce county, Huston, J., entered May 1, 1903, upon the verdict of a jury rendered in favor of the defendant by direction of the court, after a trial on the merits, dismissing an action for personal injuries sustained by one employed as a "dogger" on a saw carriage in defendant's mill.   Reversed.

*George W. Saulsberry* and *Charles Bedford,* for appellant. The sawyer was a vice principal by reason of his power of superintendence and control. *Nelson v. Willey Steamship & Nav. Co.,* 26 Wash. 548, 67 Pac. 237; *Uren v. Golden Tunnel Min. Co.,* 24 Wash. 261, 64 Pac. 174; *Allend v. Spokane Falls etc. R. Co.,* 21 Wash. 324, 58 Pac. 244; *Hammarberg v. St. Paul etc. Lumber Co.,* 19 Wash. 537, 53 Pac. 727; *Dean v. Oregon R. & Nav. Co.,* 38 Wash. 565, 80 Pac. 842; *Hunt v. Desloge Consol. Lead Co.,* 104 Mo. App. 377, 79 S. W. 710; *Missouri Malleable Iron Co. v. Dillon,* 206 Ill. 145, 69 N. E. 12; *Evans v. Louisiana Lumber Co.,* 111 La. 534, 35 South. 736; *Illinois Southern R. Co. v. Marshall,* 210 Ill. 562, 71 N. E. 597.   Also, because it was one of the duties of the master to maintain the safety of the place. *Mullin v. Northern Pac. R. Co.,* 38 Wash. 550, 80 Pac. 814; *McDonough v. Great Northern R. Co.,* 15 Wash. 244, 46 Pac. 334; *Sandquist v. Independent Tel. Co.,* 38 Wash. 313, 80 Pac. 539; *Gustafson v. Seattle Traction Co.,* 28 Wash. 227, 68 Pac. 721.   Also, because the giving of orders with respect to work by subordinates was one of the master's duties. Labatt, Master & Servant, § 541; *Coffeyville Vitrified Brick & Tile Co. v. Shanks,* 69 Kan. 306, 76 Pac. 856; *Dixon v.*

*Union Iron Works,* 90 Minn. 492, 97 N. W. 375; *Bering Mfg. Co. v. Femelat* (Tex. Civ. App.), 79 S. W. 869; *Illinois Southern R. Co. v. Marshall,* 210 Ill. 562, 71 N. E. 597; *Seymour Woolen Factory Co. v. Brodhecker,* 130 Ind. 389, 28 N. E. 185, 30 N. E. 528. Also, because the element of consociation was lacking. *Jancko v. West Coast Mfg. Co.,* 34 Wash. 556, 76 Pac. 78; *Conine v. Olympia Logging Co.,* 36 Wash. 345, 78 Pac. 932; *North Chicago Rolling-Mill Co. v. Johnson,* 114 Ill. 57, 29 N. E. 186. Where a servant is placed in a perilous situation by the orders of a superior workman, an act of the superior rendering the place unsafe, without giving a warning or opportunity to the inferior to escape, is the act of a vice principal. *Taylor v. Evansville etc. R. Co.,* 121 Ind. 124, 22 N. E. 876, 16 Am. St. 372, 6 L. R. A. 584; *Crystal Ice Co. v. Sherlock,* 37 Neb. 19, 55 N. W. 294; *Hannibal etc. R. Co. v. Fox,* 31 Kan. 586, 3 Pac. 320; *Chicago etc. R. Co. v. O'Brien,* 154 Ill. 630, 40 N. E. 1023; *Chicago etc. R. Co. v. Lundstrom,* 16 Neb. 254, 20 N. W. 198, 49 Am. Rep. 718; *Russ v. Wabash West. R. Co.,* 112 Mo. 45, 20 S. W. 472, 18 L. R. A. 823; *Hough v. Texas etc. R. Co.,* 100 U. S. 213, 25 L. Ed. 612; *Goe v. Northern Pac. R. Co.,* 30 Wash. 654, 71 Pac. 182; *Nall v. Louisville etc. R. Co.,* 129 Ind. 260, 28 N. E. 183, 611; *Cheeney v. Ocean Steamship Co.,* 92 Ga. 726, 19 S. E. 33, 44 Am. St. 113; *Richmond etc. R. Co. v. Williams,* 86 Va. 165, 9 S. E. 990, 19 Am. St. 876; *Luebke v. Chicago etc. R. Co.,* 59 Wis. 127, 17 N. W. 870, 48 Am. Rep. 483; *Louisville etc. R. Co. v. Mitchell,* 87 Ky. 327, 8 S. W. 706; *Louisville etc. R. Co. v. Hanning,* 131 Ind. 528, 31 N. E. 187, 31 Am. St. 443; *Klochinski v. Shores Lumber Co.,* 93 Wis. 417, 67 N. W. 934.

*Hudson & Holt,* for respondent. The two men were fellow servants of a common master, engaged in and about a common work. *Hawk v. McCloud Lumber Co.,* 166 Mo. 121, 65 S. W. 1022; *Millet v. Puget Sound Iron & Steel Works,* 37

Wash. 438, 79 Pac. 980. A fellow workman is a vice principal only in the performance of the master's duties. *Sayward v. Carlson,* 1 Wash. 29, 23 Pac. 830; *Watts v. Hart,* 7 Wash. 178, 34 Pac. 423, 771; *Zintek v. Stimson Mill Co.,* 6 Wash. 178, 32 Pac. 997, 33 Pac. 1055; *Hughes v. Oregon Imp. Co.,* 20 Wash. 294, 55 Pac. 119; *Allend v. Spokane Falls etc. R. Co.,* 21 Wash. 324, 58 Pac. 244. The application of the nigger was an act of operation involved in the common labor, the dangers from which were assumed risks. *Watts v. Hart, supra; Cullen v. Norton,* 126 N. Y. 1, 26 N. E. 905; *Loranger v. Lake Shore etc. R. Co.,* 104 Mich. 80, 62 N. W. 137; *Melville v. Missouri River etc. Co.,* 48 Fed. 820; *Taylor v. Evansville etc. R. Co.,* 121 Ind. 124, 22 N. E. 876, 16 Am. St. 372, 6 L. R. A. 584; *Riley v. West Virginia Cent. R. Co.,* 27 W. Va. 145; Bailey, Personal Injuries, § 2993. It is not the duty of the master to warn of the negligence of a fellow servant in such act of operation. *Wilson v. Northern Pac. R. Co.,* 31 Wash. 67, 71 Pac. 713; *Siddall v. Pacific Mills,* 162 Mass. 378, 38 N. E. 969; *Alaska Min. Co. v. Whelan,* 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390; *McGowan v. Chicago etc. R. Co.,* 91 Wis. 147, 64 N. W. 891; *Anderson v. Oregon R. & Nav. Co.,* 28 Wash. 467, 68 Pac. 863. It is not his duty to warn of transient dangers arising during the progress of the work. 2 Labatt, Master & Servant, §§ 580, 586-588, 590; Id., p. 1760, note j; *Fraser v. Red River Lumber Co.,* 45 Minn. 235, 47 N. W. 785; *Tierney v. Minneapolis etc. R. Co.,* 33 Minn. 311, 23 N. W. 229, 53 Am. Rep. 35; *Perry v. Rogers,* 157 N. Y. 251, 51 N. E. 1021; *Hermann v. Port Blakely Mill Co.,* 71 Fed. 853; *Baird v. Reilly,* 92 Fed. 884; *Armour v. Hahn,* 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440. The danger to which the plaintiff was exposed was such a transitory danger. *Meehan v. Speirs Mfg. Co.,* 172 Mass. 375, 52 N. E. 518; *Whittaker v. Bent,* 167 Mass. 588, 46 N. E. 121; 2 Labatt, Master & Servant, §§ 586, 587, and cases cited on pp. 1722, 1723. Whether the negligence was in the performance of

one of the duties owed by the master does not depend upon the control that one servant has over another. 2 Labatt, Master & Servant, §§ 515, 516, 519; Wood, Master & Servant, §§ 844, 874-885; *Stevens v. Chamberlin,* 100 Fed. 378; *Lepan v. Hall,* 128 Mich. 523, 87 N. W. 619. Signalling by one servant is not an exercise of control. 2 Labatt, Master & Servant, §§ 522, 523; *Pittsburg etc. R. Co. v. Ranney,* 37 Ohio St. 665. The master is not bound to supervise the details of the work. 2 Labatt, Master & Servant, §§ 586-591, 597; Wood, Master & Servant, 844, 874-891; *Hussey v. Coger,* 112 N. Y. 614, 20 N. E. 566, 8 Am. St. 787, 3 L. R. A. 599; *Besel v. New York etc. Co.,* 70 N. Y. 171; *Wooden v. Western New York etc. R. Co.,* 147 N. Y. 508, 42 N. E. 199. Nor to see at all times during the progress of the work that the place remains safe. *Wilson v. Northern Pac. R. Co.,* 31 Wash. 67, 71 Pac. 713; 1 Labatt, Master & Servant, § 14; *Durst v. Carnegie Steel Co.,* 173 Pa. St. 162, 33 Atl. 1102; *Petaja v. Aurora Iron Min. Co.,* 106 Mich. 563, 64 N. W. 335, 66 N. W. 951, 58 Am. St. 505, 32 L. R. A. 435; 2 Labatt, Master & Servant, §§ 588, 590; *St. Louis etc. R. Co. v. Needham,* 63 Fed. 107, 25 L. R. A. 833; *Anderson v. Oregon R. & Nav. Co.,* 28 Wash. 467, 68 Pac. 863; *Wilson v. Northern Pac. R. Co.,* 31 Wash. 67, 71 Pac. 713.

MOUNT, C. J.—This appeal is from a judgment in favor of defendant, rendered upon motion for a directed verdict at the close of plaintiff's evidence. Plaintiff appeals.

The material facts, as shown by the pleadings and plaintiff's evidence, are briefly as follows: In the year 1902, the respondent owned and operated a sawmill at Buckley, in Pierce county, Washington, for manufacturing lumber. The appellant, William O'Brien, was employed in the mill as a "dogger." This employment required the appellant to ride backwards and forwards on the saw carriage, and to attach the "dogs" to the log on the carriage. These dogs were devices for holding the logs securely in position

to saw. It was also the duty of the dogger to detach the dogs, at the direction of the sawyer, when the log was to be turned upon the carriage, and to perform such other duties as were required of him by the sawyer. The saw crew consisted of the sawyer, one tail sawyer, two doggers, and one setter. All of these men were under the supervision and control of the sawyer, and were bound to obey his orders. They took their orders from him and no one else. If they failed to obey him, they were discharged upon his recommendation to the superintendent.

Over the sawyer, there was a superintendent, who had general control over the whole mill, and who employed and discharged the men. The appellant was an experienced dogger and thoroughly familiar with the work. Near each end of the saw carriage, was a "head-block" about two feet in height, against which the ends of the logs were securely held by the dogs. Stationary in the floor of the mill, along the line of the carriage way, was a device called a "nigger," which consisted of a piece of timber with iron spikes along the upper side. This "nigger" was a powerful machine, used in striking and pushing heavy logs on to the carriage, and for turning them thereon when desired. It was operated by steam power by the sawyer, by means of a lever, and in no other way. There was also a chain device overhead, operated by steam power, for rolling logs on the carriage and for turning them while on the saw carriage. The saw carriage was operated back and forth by steam power, by means of a lever in the hands of the sawyer.

On the 31st day of July, 1902, a log thirty-two inches in diameter and twenty-four feet long was placed upon the saw carriage to be cut into lumber. After the log had been cut upon three sides, the sawyer desired it to be turned over on the carriage, so as to be cut upon the other side. He moved the saw carriage back for the purpose of using the nigger to turn the log. The dogs were released and the force of the nigger was applied to the log. The carriage

had not been moved back far enough for the stationary nigger to strike the log in the center. It struck nearer the end at which appellant was working. Instead of turning the log over upon the carriage, the nigger lifted the end of the log near appellant and placed it upon the head-block where it rested. The sawyer thereupon directed appellant to remove the end of the log from the head-block back on to the carriage. Appellant, in obedience to the order, procured a peavy or canthook, and was attempting to pry the end of the log back on to the saw carriage. He was standing with his back toward the sawyer in plain view of the sawyer, who, without warning to appellant, again applied the nigger to the log as it lay upon the head-block. The force of the blow of the nigger knocked the end of the log over the head-block, and the weight of the log caused the appellant to drop his peavy. The other end of the log, toward the sawyer, slid in the opposite direction, and struck and broke the lever, which started the saw carriage forward at full speed, with the log crosswise and raking the sides of the mill. Appellant, in order to escape the log, attempted to get through a door on the side of the mill. As he did so, the log caught his left hand, injuring it so that the amputation of three fingers was necessary.

There are two charges of negligence in the complaint: (1) that the sawyer was negligent and careless in applying the nigger to the log, without warning, while appellant was trying to pry the log off the head-block; (2) that the company was negligent in employing an incompetent and reckless sawyer, who was addicted to the use of alcoholic liquor. It is contended, on this appeal, that the evidence was sufficient to go to the jury upon both questions. We are satisfied, however, that there was no evidence upon the second question to be submitted to the jury. The evidence for the plaintiff showed that the sawyer was a competent man for the work when he was employed. If he became

incompetent, by reason of the use of intoxicating liquors or otherwise, there is no evidence that the respondent had any knowledge of the fact, or reasonably should have known it.

The other question is more difficult, and is the principal question relied upon by appellant, and is exhaustively argued by both parties. Appellant contends that the sawyer, under the circumstances shown by the evidence, was a vice principal, and that he owed a duty to appellant to warn him of an intention to apply the nigger to the log, while appellant was working with his back to the sawyer, and in no position to see what was going on. Respondent, on the other hand, contends, that the sawyer and the appellant were fellow servants, engaged in a common employment, viz., cutting logs into lumber, each having his special duties to perform, and each working in sight of the other; that the lifting of the end of the log from the head-block to the carriage was a mere detail of the work; that when the sawyer undertook to strike the log with the nigger, and thus assist the appellant to place the log properly upon the carriage, if the sawyer was negligent, either in the use of the nigger or in failing to warn the appellant of danger, such negligence was the negligence of a fellow servant, for which the master would not be liable.

It will thus be seen that the question presented is, whether the sawyer was a vice principal, or was a fellow servant with the appellant, in respect of the warning. This question is argued with learning and ability on both sides, and many authorities are called to our attention in support of the respective positions. In some respects, the sawyer was a fellow servant with the appellant. It required the labor of both to place the logs upon the saw carriage. The appellant attached the log firmly to the carriage so that it might be passed through the saw by the sawyer. The appellant loosened the logs from the carriage so that the sawyer might turn them at the proper time. In these respects,

they were fellow servants, working together, each having his particular duties in the common employment of converting logs into lumber.

In some respects, the sawyer was a vice principal. He was the superior in control of the saw crew, consisting of the doggers, the setter, and the tail sawyer. These men were bound to obey his commands. He directed their work when directions were necessary. They took their orders from him and "no one else." If they failed to obey him, they were discharged upon his recommendation to the superintendent. It is true, there is no evidence that the sawyer had power to hire men or to discharge them except as above stated; but we held, in *Allend v. Spokane Falls etc. R. Co.*, 21 Wash. 324, 58 Pac. 244, that "the power of superintendence and control is the test" in such cases. Under this rule, the sawyer stood in the place of the master, for the purpose of directing the work of the saw crew, and was therefore a vice principal to that extent. We are also of the opinion, that the sawyer was a vice principal in respect to the safety of the place and the appliances.

"It is the master's duty to provide a safe place for his employee to do his work, and to see that it is kept in a suitably safe condition, and this duty he cannot delegate to another so as to relieve himself from liability." *McDonough v. Great Northern R. Co.*, 15 Wash. 244, 46 Pac. 334, and cases cited.

There appears to be no contention in this case that the appliances were not in good order, or that the place was not as safe, under ordinary circumstances, as the character of the work would permit. These facts are therefore conceded. As to the details of the work in which the sawyer and appellant were fellow servants, the master was not liable; but when the log was placed by accident in an extraordinary position upon the head-block, the direction of the sawyer to appellant to remove the log was a command

35—39 WASH.

by the master to the servant which he was bound to obey. It was the duty of the master, then, to keep the place into which he had sent the servant reasonably safe, or to inform the servant of dangers known to the master, or which reasonably should have been known to him, and which were unknown to the servant. If the sawyer, acting in the place of the master, intended to direct another agency under his control to act in conjunction with the appellant, which agency rendered the place dangerous, it was certainly the duty of the master to inform the servant thereof. Especially, where the servant was in such a position that he could not observe the agency, or the fact that it was about to be put into action.

Respondent contends that the act of the sawyer in using the nigger the second time was a detail of the work, and in that respect he was acting as a fellow servant. This contention is probably correct, so far as the mere fact of using the nigger was concerned. But in view of the fact that, when the nigger was used the first time, it threw the log upon the head-block, it was apparent to every one that another blow by the nigger, while the log was in that position, would send it further over and make the position of the appellant an extremely dangerous one and, therefore, it was the duty of the master to see and know of the danger, and not to direct the nigger into action without notice to the appellant. In other words, the sawyer, as master, knew that he was about to direct the nigger into action. He knew, or should have known, of the peril in which he was about to place the appellant. The appellant did not know what the master had ordered. He could neither see nor hear him. The sawyer, then, as servant, performed the detail of the work as directed by him as master. The negligence which made the place a dangerous one was the failure of the sawyer as master to warn the appellant of the danger in which he was about to place the servant. This view of the case, which we think is the logi-

cal and correct one, brings this case squarely within the rule announced in *Nelson v. Willey Steamship & Nav. Co.,* 26 Wash. 543, 67 Pac. 237, and cases there cited, where we held, in substance, that when the performance of an act will place a servant in a dangerous place which is known, or should be known, to be such, and where such act is performed by a fellow servant at the command of the vice principal, it is the duty of the master to warn the servant in such dangerous place, and a failure to give such warning is negligence of the master. This case cannot reasonably be distinguished in principle from the *Nelson* case, and is controlled by it.

Counsel for respondent argues that the principles which were applied to the case of *Sayward v. Carlson,* 1 Wash. 29, 23 Pac. 830, and cases which subsequently approved that case, are applicable to this case upon the question as to whether the sawyer and the dogger were fellow servants. But from what we have said above, indicating that the sawyer was a vice principal as to the duty to warn the appellant of the danger of the place, his negligence in this respect was the neglect of the master, and distinguishes *Sayward v. Carlson* from this case. There being sufficient evidence to go to the jury upon this point, the lower court erred in directing a verdict for defendant.

The judgment appealed from is therefore reversed, and the cause remanded for further proceedings.

HADLEY, FULLERTON, and CROW, JJ., concur.