[No. 7137. Decided October 14, 1908.]

ALBERT E. TILLS, *Respondent*, v. GREAT NORTHERN
RAILWAY COMPANY, *Appellant*.[1]

MASTER AND SERVANT—VICE PRINCIPALS—OPERATION OF RAILROADS —SUDDEN STOPPING OF CAR. A section foreman in charge of a hand car, which all of the men are propelling by hand on their way to their work, is a vice principal, and the master is liable for injuries sustained by one of the crew through his negligence, where it appears that, by his direction, knowing that he would soon meet a freight train, the car was being driven at a reckless rate of speed, down grade, where there were many curves and bluffs obstructing the view, in an endeavor to reach his destination before arrival of the train, and that, upon the train's appearing in sight, he suddenly applied the brakes without warning, whereby the plaintiff was thrown from the car.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $26,985, for personal injuries, reduced to $20,000 by the trial court, is not excessive, where it appears that the plaintiff, a section man, forty-three years of age, in good health, earning $2.25 per day, was run over by a hand car, dislocating his vertebra, that he is paralyzed from his hips down, has completely lost the control of his bowels, urinary and other organs, and is completely helpless and will be confined to his bed for the remainder of his life, and suffers constantly.

Appeal from a judgment of the superior court for King county, Griffin, J., entered July 26, 1907, upon the verdict of a jury rendered in favor of the plaintiff for personal injuries sustained by a section man thrown from a hand car. Affirmed.

*L. C. Gilman* (*James B. Howe* and *R. C. Saunders*, of counsel), for appellant.

*Arthur C. Dresbach*, for respondent.

CROW, J.—This action was commenced by Albert E. Tills against the defendant, Great Northern Railway Company, to recover damages for personal injuries. From a judgment in his favor, the defendant has appealed.

[1]Reported in 97 Pac. 737.

The cause was submitted upon evidence offered by the respondent, the arguments of his counsel, and the instructions of the court. The undisputed evidence shows that, a short time prior to the date on which the accident occurred, the respondent was employed by one Ward, a section foreman, to work for appellant as a section hand; that from Index, Washington, west to the place where the accident occurred, appellant's railway track, with a descending grade, followed the right bank of the Skykomish river, a mountain stream; that curves, bluffs, and timber concealed approaching trains; that respondent, and other section hands under Ward's direction, loaded a hand car with crowbars, jackscrews, shovels and other tools, and with Ward in charge started westward thereon down grade; that respondent, standing between two section men, was riding backward, while Ward, with two other section hands, stood facing him; that respondent stood with one foot on the car platform and the other upon a jackscrew; that all the men, including Ward, were propelling the car by using a handle bar provided for that purpose; that Ward, expecting to meet a freight train coming from the west, was anxious to reach its destination before its arrival; that he therefore caused the men to propel the car at a speed of seventeen miles per hour, repeatedly giving the order: "Up and down," thereby directing its movements; that on rounding a sharp curve Ward saw the approaching freight train, and placed his foot upon the brake so suddenly as to instantly check the car, without any warning to respondent or the other men; that at the same instant he called out: "The freight!" and that by reason of the sudden stop, the respondent, taken unawares, was thrown to the ground in front of the car, which ran over and severely injured him.

The appellant has based numerous assignments of error upon instructions given and refused. It is unnecessary to state these instructions, as appellant's controlling contention is that the act of Ward which resulted in the injury to respondent was not the act of a vice principal, but the act of

respondent's fellow servant, for which appellant is in no manner liable.   It insists that Ward's relation to appellant and the other men was only that of a "supervising employee;" that in a portion of his duties he represented the master; that in others he acted as a co-laborer with the section men; that, while in the performance of the former he was a vice principal, he was in the performance of the latter a fellow servant; and that the relation of Ward to the other employees of appellant in this case must be determined by the nature of the acts he and they performed.   In substance, the appellant contends that while aiding the section men in propelling the car, and when he himself applied the brake, Ward was their fellow servant, and not a vice principal representing the master.   In support of this contention the appellant has cited, with others, the following cases from courts of other states, upon which it specially relies:   *Gann v. Nashville etc. R. Co.*, 101 Tenn. 380, 47 S. W. 493, 70 Am. St. 687; *Justice v. Pennsylvania Co.*, 130 Ind. 321, 30 N. E. 303; *Davis v. Southern Pac. Co.*, 98 Cal. 19, 32 Pac. 708, 35 Am. St. 133; *Hammond v. Chicago etc. R. Co.*, 83 Mich. 334, 47 N. W. 965; *Olson v. St. Paul etc. R. Co.*, 38 Minn. 117, 35 N. W. 866.

A sharp conflict of authority exists on this question, a contrary position having been taken by other courts.   In *Haworth v. Kansas City Southern R. Co.*, 94 Mo. App. 215, 68 S. W. 111, on a state of facts strikingly similar to those before us, the court said:

"A superior or vice-principal in charge of workmen does not become a co-workman whenever he actively assists in the manual performance of a task, instead of superintending it. If he chooses to take on himself the role of laborer he may do so, but he does not thereby divest himself of his responsibility as foreman or superintendent and his duty to see that work is done in a careful way.   The judgment and care which he must use as superintendent to see that precautions are taken to avoid harm to his gang, continue to be exacted of him by the law, although he may have stepped down from his pedestal for an interval.   *Russ v. Railroad Co.*, 112 Mo. 45; *Dayharsh*

*v. Railroad Co.*, 130 Mo. 570; *Steube v. Iron Co.*, 85 Mo. App. (St. L.) 646. Dyson was Haworth's superior, and the superior of all the men in his crew. He was selected by the defendant company to direct the operation and movement of the car as well as to control the other work of the hands under him; he was in fact directing them, and the company is liable for his negligent act or omission while so doing."

In *Berea Stone Co. v. Kraft*, 31 Ohio St. 287, 292, the supreme court of Ohio said:

"The claim that Stone was a fellow-servant engaged in the same service with Kraft, is not supported by the proof. It is true that he was in the service of the same master, and engaged in the same general employment, but he was intrusted with duties and responsibilities of entirely a different nature, and wholly independent of those of Kraft. Occupying to the latter, the relation, substantially, of principal, he was in no just or proper sense a fellow-servant, nor engaged in what may properly be denominated a common service. The relation existing between them was such as brings the case clearly within the rule established by repeated adjudications of this court, and now firmly settled in the jurisprudence of the state, that where one servant is placed by his employer in a position of subordination to, and subject to the orders and control of another, and such inferior servant, without fault, and while in the discharge of his duties, is injured by the negligence of the superior servant, the master is liable for such injury."

In *Bien v. St. Louis Transit Co.*, 108 Mo. App. 399, 412, 83 S. W. 986, the court said:

"The act of Dring which resulted in Bien's injury was not an act which it was Dring's duty manually to perform, but one which it was his duty to order. That is to say, it fell within the scope of his superintendency. The exact question then is, did performance of it by his own hand make him a fellow-servant? If it is to have a logical nature, the 'dual capacity' doctrine would seem to require that an employee who is regarded as both a fellow-servant and a vice-principal, should have duties assigned to him in each role. The doctrine ought not to take effect on the bare incident of a superintendent, *sua sponte* and momentarily, putting his hand to some chore. . . . If Dring, instead of running the car

out of the way himself, contrary to his duty and habit, had ordered another man to do it, the company's liability would be certain. Is it any less certain because Dring ran it; it being, as stated, a duty which properly he should have ordered instead of performing? Unquestionably not, according to the decisions in Missouri on identical facts."

See, also, *Russ v. Wabash Western R. Co.*, 112 Mo. 45, 20 S. W. 472; *Chicago etc. R. Co. v. Kimmell*, 221 Ill. 547, 77 N. E. 936.

It cannot be contended that Ward was not in charge of the men; that he did not control the car, its movements and speed; that he did not determine when it should be used, when it should start, what speed it should attain, or when and where it should stop. In the performance of these necessary duties he was a vice principal. It was under his direction that the car attained a reckless and dangerous rate of speed down grade and in the face of an approaching train, of which he had knowledge. Had he ordered one of the men to suddenly stop the car, without any warning to or knowledge of the others, his act would certainly have been that of a vice principal, and not that of a fellow servant. We fail to see that he changed his relation to the appellant or respondent by personally applying the brake instead of directing one of the men to do so. If he was not a vice principal in charge of the men and car, then they were without any vice principal in control as the representative of the master, a condition which could not be assumed to have existed and certainly ought not to have been tolerated. The former holdings of this court, made in kindred cases, are directly contrary to the position of appellant and the cases which it has cited. See, *McDonough v. Great Northern R. Co.*, 15 Wash. 244, 46 Pac. 334; *Nelson v. Willey S. S. & Nav. Co.*, 26 Wash. 548, 67 Pac. 237; *O'Brien v. Page Lumber Co.*, 39 Wash. 537, 82 Pac. 114; *Woods v. Globe Nav. Co.*, 40 Wash. 376, 82 Pac. 401; *Dossett v. St. Paul & Tacoma Lumber Co.*, 40 Wash. 276, 82 Pac. 273; *Comrade v. Atlas Lumber & Shingle Co.*, 44 Wash. 470, 87 Pac. 517.

In the case last mentioned, an engineer, without giving the usual warning, started the machinery in a sawmill, while the plaintiff, a saw filer who was performing his duties, was in a dangerous position. It was contended that the negligence of the engineer was that of a fellow servant, but this court said:

"It was customary for the appellant, by its engineer, to give a signal by two blasts of a steam whistle shortly before starting the mill, and in fact it was its duty to give some such warning so that its employees might remove themselves from positions of danger in which they might happen to be placed. In giving this warning, the engineer was performing a nondelegable duty of the master, thus discharging the duties of its vice principal. This being true, his negligence was that of the master."

Appellant also cites *Grim v. Olympia L. & P. Co.,* 42 Wash. 119, 84 Pac. 635, in support of his contention that Ward and the respondent were fellow servants. The facts in that case are not at all similar to those now under consideration. There, two motormen were coemployees without authority the one over the other, although they were expected to consult together; while here, Ward had undoubted authority, superintendence and control over the respondent Tills. It could not be reasonably contended that Tills had any connective or controlling influence over Ward, arising out of consociation of duties. He was completely under Ward's commands, and it is not at all doubtful that any attempt on his part to assume control over Ward or give him directions would have resulted in loss of employment, a result not possible in the *Grim* case. After a careful examination of all instructions, both those requested and those refused, upon which the appellant has predicated its assignments of error, we hold that those given correctly stated the law applicable to the pleadings and evidence, and that no error was committed in the refusal of those requested.

The jury returned a verdict for $26,985 damages. Upon the hearing of appellant's motion for a new trial, the trial

court required the respondent to remit $6,985 thereof, or submit to a new trial. This remission being made, final judgment was entered for $20,000. The appellant now contends that the judgment is still excessive, that it should not be permitted to stand, and that this court should now grant a new trial by reason of excessive damages awarded under the influence of passion and prejudice. The undisputed evidence shows that the respondent was forty-three years of age, in good health, earning $2.25 per day; that he was most seriously injured; that the loaded car ran over him, dislocating a vertebra; that he is paralyzed from his hips downward; that he has completely lost control of his bowels, urinary and other organs; that he has been confined to his bed since the accident, and will be during the remainder of his life; that he has sustained other injuries; that he has suffered and will continue to suffer intensely; that his condition is such as to require the constant attendance of a nurse and the frequent services of a physician; and that, although he is in this unfortunate condition, he may live the expected period for a man of his age. He is absolutely helpless, and it is difficult to understand how he could be more seriously injured and continue to live. There is no dispute of the evidence of the respondent and his physician as to the nature or extent of his injuries. Bearing in mind the fact that the trial court has already made a reduction of $6,985, we do not feel justified in disturbing the judgment or holding it excessive.

The appellant has also based an assignment of error upon the refusal of the trial court to grant it a continuance, upon its motion made at the opening of the trial, and supported by affidavits. We have carefully examined the motion and affidavits, but fail to find that the court abused its discretion or committed any error in this regard. The judgment is affirmed.

HADLEY, C. J., DUNBAR, RUDKIN, and FULLERTON, JJ., concur.

MOUNT and ROOT, JJ., took no part.