[No. 8668.    Department Two.    June 30, 1910.]

VICTOR NELSON, *Respondent*, v. SMYTH CONSTRUCTION
COMPANY, *Appellant*.[1]

MASTER AND SERVANT—NEGLIGENCE OF FOREMAN—EXCAVATIONS—
FALL OF ROCK—QUESTIONS FOR JURY.  The negligence of a foreman
in changing a stream of water in hydraulicing a bank of earth
is for the jury, where it appears from the testimony of the plain-
tiff, a laborer engaged about the sluice boxes, that he was directed
by the foreman to start a rock down the box, and while so en-
gaged the stream was changed and directed against the bank above
him without any warning, dislodging a rock which rolled upon him,
although he started to run away as soon as the stream was changed.

Appeal from an order of the superior court for King
county, Gay, J., entered November 27, 1909, granting a
new trial, after granting a nonsuit at the close of plaintiff's
case, in an action for personal injuries.    Affirmed.

*Hughes, McMicken, Dovell & Ramsey*, for appellant.
*Martin J. Lund*, for respondent.

PARKER, J.—This is an action to recover damages for
personal injuries, alleged to have resulted to the plaintiff
from negligent acts of the defendant.    The cause proceeded
to trial before the court and a jury.    At the close of the
plaintiff's evidence, defendant's attorneys moved for a non-
suit on the ground, among others, that "There is no evidence
to establish the alleged negligence on the part of the defend-
ant," which motion was granted.    Thereafter the plaintiff
moved for a new trial, which was granted.    The defendant
has appealed.

The principal negligence charged against the defendant
by plaintiff in his complaint is the following:

"That on said day plaintiff was working under the orders
and directions of one of defendant's foremen, whose name he
does not know, and whose orders plaintiff was directed to

[1]Reported in 109 Pac. 804.

obey by the defendant, and on said day the plaintiff was engaged under the directions of said foreman in breaking rocks washed from a bank of gravel, sand and hardpan, and the foreman was directing a stream of water upon said bank washing it down, and while the plaintiff was so engaged the foreman suddenly, unknown to the plaintiff, negligently and carelessly directed the stream of water to a part of the bank directly above where the plaintiff was working, thereby causing that part of the bank to come down and a large rock to fall upon the plaintiff, causing the injuries hereinafter complained of."

The sufficiency of the evidence to carry the case to the jury upon the question of negligence involved in this allegation we think is all that we are required to notice in determining the correctness of the learned trial court's ruling in granting a new trial. The evidence shows that the appellant was engaged in excavating a cut for a railway by hydraulicing; that is, by projecting a powerful stream of water into and against the sides and end of the cut, washing the material down and carrying it off through a sluice box. The sluice box laid in the bottom of the cut and extended up into it. The cut was about 50 feet deep, about 60 to 70 feet wide at the top, about 30 or 40 feet wide at the bottom, and about 70 feet long, the sides and end being very steep, the bottom sloping toward the sluice box. Respondent had gone to work for appellant some few days before he was injured, and had been engaged in working along the sluice box. Just before he was injured, the foreman asked him to take a rock apart which had been broken by dynamite, and make the pieces go down the flume. This rock lay about 8 feet from the upper end of the sluice box. It was while working there during the afternoon of January 12, 1908, that respondent was injured. He could not talk English very well, and some of his testimony was given through an interpreter. He testified, among other things, in describing the accident, as follows:

"Q. You went up and went to work breaking the rock? A. Yes. Q. And while you were doing that what happened

to you if anything? A. Then I started to work with the rock; I just heard the rock drop down, and then I turned up and I saw the water coming just behind me. He was making it go a little bit high, and I started to run as fast as I could, but I could not run more than I guess it was five or six feet. I am not sure of the exact feet, but I just started to run, and then it came so fast it catch me and I fell down the flume and the big rock on top of me. . . . Q. How far was the nozzle of the hydraulic? A. I guess ten feet on one side of it. Q. About ten feet from the flume? A. Yes. Q. This hydraulic was throwing a stream against the face of the cut? A. Yes. Q. How long a stream? A. It was about twenty-five feet. Q. How big a hydraulic was it? A. I guess it was three or four inches big. Q. There was one (boulder) apt to come down any time while you were working there? A. Well, not then. The water was coming on the other side. Q. Who had hold of the hydraulic. Was there any one directing the stream? A. The boss had hold. Q. The stream had been running at that same place about half an hour before you came up to work? A. Yes, sir. On the other side I was working. Q. How long had it been throwing the stream at this particular place? A. I can't exactly say, but about a couple of minutes. . . . A. When I commenced to work the water was plying away from me, but then I heard the stone and looked up and the water was going right over me. Q. How far had it been changed? A. It is hard to tell, but I believe it was about twenty-five feet. Q. You knew the water was apt to bring those rocks down at any time didn't you? A. Yes I knew that, but I didn't know the water was to be turned on the side where I was working. Q. Take out your watch and hold it up and wait until the minute hand goes around the circle one minute. (Witness does so.) Q. That is a minute isn't it? A. Yes. Q. Was it as long as that after the water was changed before the rock came down? A. I don't believe it was as long as a minute. Q. What caused the rock and sand and gravel to come down in that cut? A. Water. Q. What if any knowledge did you have when you went in to break the rock that the water would be turned over to the side where you were working? A. I knew that the water was being changed, but I didn't know it would change there."

This testimony, it seems to us, was such that respondent

was entitled to have the question of appellant's negligence submitted to the jury. If the foreman directed the stream over where respondent was at work resulting in bringing down the rock by which he was injured, the jury might well conclude that the injury was the result of appellant's negligence through its foreman. *Nelson v. Willey Steamship & Nav. Co.*, 26 Wash. 548, 67 Pac. 237; *O'Brien v. Page Lumber Co.*, 39 Wash. 537, 82 Pac. 114; *Creamer v. Moran Bros. Co.*, 41 Wash. 636, 84 Pac. 592.

Considerable of the argument of learned counsel for appellant is devoted to the subjects of contributory negligence and assumption of risk. We find nothing in this record to warrant us in holding that the injury was in any way contributed to by the negligence of respondent, and of course he did not assume any risks resulting from the master's negligence. 1 Labatt, Master and Servant, § 2.

We are of the opinion that the order of the learned trial court in granting respondent's motion for a new trial should be affirmed. It is so ordered.

RUDKIN, C. J., DUNBAR, MOUNT, and CROW, JJ., concur.