[No. 6376.  Decided January 15, 1907.]

MORRIS EIDNER, *Respondent*, v. THREE LAKES LUMBER
COMPANY, *Appellant*.[1]

MASTER AND SERVANT—NEGLIGENCE—SAFE PLACE—CONTROL OF MA-
CHINERY.  The master is liable to a servant, a setter on a saw-
carriage, who is injured through the negligence of the head sawyer
in leaving his post without locking a safety device to prevent the
carriage from suddenly starting without warning, where the head
sawyer had complete control of the machinery and the saw crew;
since the master owed the duty to keep the place safe or warn the
servant, and the head sawyer was a vice principal with respect to
such duties.

Appeal from a judgment of the superior court for Sno-
homish county, Black, J., entered May 1, 1906, upon the ver-
dict, of a jury in favor of the plaintiff for $5,348, for per-
sonal injuries sustained by a setter employed upon a saw car-
riage in defendant's mill.    Affirmed.

*Cooley & Horan*, for appellant.

*John W. Miller* and *McMurchie & Locke*, for respondent.

MOUNT, J.—The plaintiff in this case recovered a judg-
ment for $5,348, for personal injuries.   Defendant appeals.

There is no dispute as to the facts.  The only question pre-
sented is whether under the facts the plaintiff made a case
sufficient to go to the jury.  The facts are:  The appellant
owned and operated a sawmill in Snohomish county.  The saw-
carriage used in the mill was the kind commonly known as a
"shot gun" or "steam feed" carriage.  It was moved back and
forth upon a track past the saw by means of steam power ap-
plied directly to the piston attached to the carriage.   The
steam was applied by means of a lever operated by the head
sawyer.  This lever was equipped with a device which, when
used, held the lever when not in use so to prevent the ad-

[1]Reported in 88 Pac. 326.

mission of steam into the piston. On the 19th day of September, 1905, the respondent was engaged in his duties as setter upon the carriage. In order to perform his duties, it was necessary for him at all times to stand upon the carriage. On that day while respondent was engaged in his duties as setter and while he was standing in his position upon the carriage waiting for a log and observing the movements of the log as others of the crew were about to place the same upon his carriage, the head sawyer left his post at the lever and omitted to lock said lever with the safety device furnished for that purpose, and failed to notify respondent that the lever was insecure. After the head sawyer had left his post, the lever, on account of not being secured, moved forward by its own weight and permitted steam to enter the piston, thereby causing the carriage to start suddenly and move forward very rapidly, so that the respondent was thrown down upon the head block, and immediately thereafter the carriage struck the bumper at the end of the track with great force and injured the respondent very severely. The head sawyer had full control of the machinery in connection with the saw and saw-carriage, and also had full control of the saw crew, consisting of the respondent and three other men, who were under his orders and bound to obey his commands. These men were subject to dismissal upon the head sawyer's recommendation. They received orders from him and from no one else. The negligence alleged in the complaint is in substance that the head sawyer carelessly left his post of duty and left the lever which controlled the saw carriage, unsecured, and left the respondent in a dangerous position, without warning him thereof.

Counsel for appellant contend that the appellant had done its full duty when it furnished a reasonably safe place for respondent to work, reasonably safe tools and machinery, and reasonably careful employees. Such is no doubt the rule. But the duty of the master does not end there. He must also

maintain the safety of the place. It cannot be said that the master may permit the place to become unsafe by the use of the implements furnished or by neglect to perform a duty devolving upon him, and then avoid liability because the implements furnished were originally reasonably safe. It is conceded apparently that the implements furnished by the master in this case were reasonably safe at the time of the accident, but the injury occurred by reason of the head sawyer neglecting to use a device furnished him to *keep* the *place* safe. It is apparently conceded, too, by the appellant that the head sawyer stood in the place of the master and was a vice principal in all respects which related to the control of the saw crew, such as giving orders and the like. But it is contended that, in the use of the lever, the head sawyer was a fellow servant with the respondent, because the use of the lever was a mere detail of the work.

In the case of *O'Brien v. Page Lumber Co.*, 39 Wash. 537, 82 Pac. 114, in speaking upon this question, we said: "This contention is probably correct so far as the mere fact of using the nigger is concerned." But we held in that case, that, where the master knew, or should have known, the danger in which the servant stood, and when the master directed the machinery in motion without warning the servant, the master was liable for the injury occasioned to the servant. The line between the duties of the master and the duties of the servant was drawn in that case at the point of control of the machinery. In the case of *Dossett v. St. Paul etc. Lumber Co.*, 40 Wash. 276, 82 Pac. 273, the same rule was applied. In both of those cases the act of negligence consisted of directing machinery into motion without warning a servant in a dangerous place. In the case at bar the negligence consisted in the omission of the sawyer to use a device furnished him, and in failing to warn the servant thereof. If it was the duty of the master to furnish and maintain a reasonably safe place for the servant, it seems to follow that it was his duty to

control the machinery in such manner as was necessary to accomplish that result.   The use of the safety device was a convenience for the master which he or his representative might use to control the starting or stopping of the machine.   We held in the cases cited that the head sawyer was a vice principal for the purpose of directing the saw crew and in respect to the safety of the place and the appliances, and that it was his duty to warn the servant in a dangerous place, when the danger was known or should have been known to the master and was unknown to the servant.   This case seems to be controlled by the rule applied in those cases.   If the master personally had stood at this lever and had wilfully or carelessly set the carriage in motion, or directed it to be set in motion, with the result shown in this case, it would scarcely be claimed that he would not be liable.   Or if he had left the lever, as was done by the head sawyer, without using the safety device and without warning the employees in places of danger, his conduct in that regard would clearly have been negligence for which he would be liable.   The safety device was for the purpose of controlling the machine and rendering the place safe.   The fact that the head sawyer used the lever and to that extent was a fellow servant with those around him would not excuse him from duties which devolved upon him as vice principal to keep the place reasonably safe, because his position was one of authority and control with the means of control in his own hands.   The safety of the saw-carriage was not changing.   It remained constant so long as the master did his duty and properly directed its movements.   Otherwise the machine became a death trap for all working about it.

We are of the opinion, therefore, that the omission to use the safety device or in some way to control the carriage, was as much negligence of the master as though he had been personally present and had given an unusual order or had started the machinery when the servant was known to be in a dangerous place, without warning, or had omitted some other duty

he owed to his servant. In other words, the duty to control
the machine in this case was the duty of the master in charge,
and was not the duty of a fellow servant with respondent.
The evidence as a matter of law was, therefore, sufficient to
go to the jury.

The judgment is affirmed.

DUNBAR, CROW, and RUDKIN, JJ., concur.