[No. 9357. Department One. August 18, 1911.]

CLARENCE RAY DYER, *by his Guardian etc., Respondent,* v. UNION IRON WORKS, *Appellant.*[1]

MASTER AND SERVANT—FELLOW SERVANTS—VICE PRINCIPAL. A blacksmith having sole charge and control of a steam hammer and two helpers is a vice principal, and not a fellow servant, with reference to his act in putting the hammer in operation while a helper is in a dangerous position.

MASTER AND SERVANT—NEGLIGENCE—STARTING MACHINERY — EVIDENCE—QUESTION FOR JURY. It is for the jury to determine whether a blacksmith was guilty of negligence in starting a steam hammer before his helper had time to place a stop block in position and withdraw his hand from danger, where he himself testified that he placed the heated iron on the die before the block was in place and had to withdraw it, and there was evidence that the hammer was brought down catching the helper's fingers before they could be withdrawn.

SAME—CONTRIBUTORY NEGLIGENCE. In such a case, contributory negligence of the plaintiff is a question for the jury.

SAME—ASSUMPTION OF RISKS. In such a case, the helper does not assume the risk of the negligence of the blacksmith acting as vice principal.

[1]Reported in 117 Pac. 387.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered November 7, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a minor employed as a blacksmith's helper. Affirmed.

*Post, Avery & Higgins*, for appellant.

*F. H. McDermont* and *Atwood A. Kirby*, for respondent.

PER CURIAM.—This action was brought by the respondent, a minor, through his father as his guardian *ad litem*, to recover for personal injuries suffered by him while he was in the employ of the appellant. The respondent was employed as a blacksmith's helper, and received his orders from the blacksmith under whom he was working, both as to the character of work he should do and as to the manner in which he should perform it. At the time he was injured, the respondent was working under a blacksmith by the name of Allison; they were engaged, with the assistance of another helper, in shaping axles for a disc harrow. The axles were shaped one at a time. In performing the work, an axle was first heated in a forge to a welding heat, it was then carried to a steam hammer where it was hammered into the form desired, when it was brought back to an anvil near the forge and finished with hand hammers. The work at the steam hammer seems to have consisted of three processes. A piece of iron called a stop block was first inserted between the dies of the hammer, and the axle was then brought over, placed between the dies and hammered into a square having the thickness of the stop block. The block was then pushed off and a tip drawn on one end of the axle. A swedge with two molds was then placed between the dies, and the axle finally shaped by hammering it into these molds. It was then carried back to the anvil and finished with hand hammers as stated.

The respondent's first duty as helper was to place the stop block between the dies of the steam hammer. His second duty

was to place the swedge therein, and his third to assist in the hammering at the anvil. The other helper operated the steam hammer and helped with the hand hammer at the anvil. The blacksmith handled the axle and directed the work of the others. There seems to have been no system of signals between the different workers. The respondent would start to put up the stop block as soon as the finishing work at the anvil was concluded, the other helper would start at the same time for the gauges operating the steam hammer, and the blacksmith would seize another heated axle and carry it to the hammer. The helper operating the hammer would start the hammer in operation as soon as he saw that the blacksmith had placed the iron between the dies. The axles were heated in the forge four at a time, and were finished with the one heating. It was necessary after the irons were once heated that the work proceed rapidly until all were finished.

The respondent was injured while putting the stop block in place. After concluding his work at the anvil, he started back to place the stop block, and was in the performance of the act when the blacksmith arrived with the heated axle. As the blacksmith placed the heated iron in the die the other helper started the hammer. The respondent did not succeed in entirely clearing himself from the hammer, and lost the ends of his fingers on one of his hands.

The respondent based his cause of action upon the claim that the blacksmith stood to him in the relation of a vice principal, and that the blacksmith was guilty of negligence, which negligence caused his injury. The appellant asserts the contrary of these propositions, and contends, further, that the respondent's injuries were caused by his contributory negligence, and that he assumed the risk of injury when he engaged to perform the work. A contention is made also that the question whether or not the blacksmith and the respondent were fellow servants was a question for the jury.

In support of its contention that the blacksmith and the respondent were fellow servants, the appellant has cited a

long line of cases from other jurisdictions presenting a state
of facts similar to the facts in the case at bar and holding
thereon that the employees so situated bore the relation of
fellow servants. But this court has heretofore refused to fol-
low the rule of these cases. We have held that where a master
employs a number of servants to work with a dangerous
agency and gives to one servant exclusive control of the
agency with power to direct where the other servants shall
work and the manner in which they shall work, the one given
control is the representative of the master, that his negligence
is the negligence of the master, and any one injured by rea-
son of such negligence, not contributed to by him, has a
cause of action against the master for the injury so suffered.
*O'Brien v. Page Lumber Co.*, 39 Wash. 537, 82 Pac. 114;
*Dossett v. St. Paul & Tacoma Lum. Co.*, 40 Wash. 276, 82
Pac. 273; *Westerlund v. Rothschild*, 53 Wash. 626, 102 Pac.
765; *Eidner v. Three Lakes Lumber Co.*, 45 Wash. 323, 88
Pac. 326. The facts bring the present case within this rule.
The blacksmith, Allison, had sole charge of the steam ham-
mer, and if he put it into motion while the respondent was in
a dangerous situation and thereby caused an injury to the re-
spondent, his act was that of a vice principal of the master
and not a fellow servant of the respondent.

Whether or not the injury to the appellant was the result
of negligence on the part of Allison was a question for the
determination of the jury. After finishing one axle at the
hammer, the respondent was entitled to sufficient time to go
back to the steam hammer, place the stop block thereon, and
get clear of the machine before this hammer was put in
motion. It was a question for the jury in this case whether
he was given that time, and if not given sufficient time,
whether the failure so to do was negligence. That the black-
smith got to the hammer with the heated axle and placed it
between the dies before the stop block had been put in posi-
tion, he himself testified; in fact, he testified that, after plac-
ing the iron on the die, he discovered that the block was not

in place, and withdrew the iron before the dies of the hammer were brought together. It was his duty to look out that the machine was ready for operation before he signaled for it to be put in operation, and the jury could well have found that he did not do it in this instance.

So, also, the question whether the respondent negligently contributed to his injury was for the jury. The facts as detailed do not conclusively point to such an inference.

Neither is the claim that the respondent assumed the risk of injury well founded. Undoubtedly he assumed the ordinary and obvious risks incident to the employment, as well as the special risks arising out of dangerous conditions known and appreciated by him, but he did not assume the dangers caused by the negligence of a vice principal. It was therefore for the jury to say whether the act causing the injury was one naturally connected with the due performance of the work, or whether it was the result of negligence on the part of the blacksmith, Allison.

As to the final objection, we are clear that in this case the question whether Allison was a vice principal or a fellow servant was one of law for the court, and not a question of fact for the jury. Under certain conditions, undoubtedly, the question can become a mixed question of law and fact, in which case it is proper to submit the question to the jury under instructions to find one way or the other as they find the facts to exist, but where the relation of the parties is undisputed, the question is ordinarily one of law.

The judgment is affirmed.