RAYMOND DUNSCOMB, by K. L. DUNSCOMB, his Next Friend, Respondent, v. JAMES W. LUSK, W. C. NIXON, and W. B. BIDDLE, Receivers of THE ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY, Appellants.

Springfield Court of Appeals, January 8, 1917.

1. **RAILROADS: Injuries to Minor Assisting Father: Liability.** Action against a railroad for personal injuries to a boy eleven years old who fell under the wheels of a stock car while assisting his father and defendant's station agent in spotting a certain car by hand which was to be used in shipping cattle belonging to the boy's father. Defendant company was not guilty of negligence because the agent permitted the boy to accompany his father and assist in the work under the immediate care and eye of his father.

2. ————: ————: ————. That defendant's station agent, while the plaintiff, a boy of eleven years of age, was assisting him and the boy's father to spot a car to be used in loading the father's cattle gave the boy a block of wood to use in place of a stick, would not render defendant company liable for negligence.

3. ————: **Negligence: What Not: Failure to Place Car.** Action against a railway for injuries to a boy eleven years of age. The boy was injured while assisting his father and defendant's station agent place a car at a stockyard chute in which was to be loaded some stock belonging to the boy's father. Negligence cannot be imputed to the company because its train crew failed to spot an empty car at such chute, where such place was already occupied, the stock had not yet arrived and the crew had gone to the next station to return within an hour.

4. ————: ————: **Exposed Ends of Ties.** Nor could negligence be imputed to defendant company because its agent permitted the boy to assist his father and such agent in moving cars along a track where the ends of the ties extended above the ground, the ballast not covering same, on which ties the boy tripped and fell under the car, it being shown that such track construction was customary.

5. ————: ————: **When No Liability.** Nor can defendant company be *held* liable for negligence because its agent permitted the boy to pass to the other side of the car out of the agent's sight where he was injured.

6. **RAILWAYS: Injuries to Licensee With Interest.** One who in furtherance of his own interests or those of his master assists the servants of another in the performance of their work, is neither a fellow servant of such servants nor a mere volunteer, but occupies the position of a licensee with an interest.

7. ————: ————: **Liability. Respondeat Superior.** Where such licensee with an interest is injured through the negligence of the servant whom he assists, the doctrine of *repsondeat superior* applies and the master of the negligent servant is responsible for the injury.

8. ————: **Injury to Minor: Licensee With an Interest: Liability.** The plaintiff, a minor, was injured while assisting his father and the agent of the defendant railway company in moving an empty car to defendant's stock chute for the purpose of loading his father's stock. Though he was a licensee with an interest and defendant railway company was liable in case of negligence on the part of its agent, no such negligence is shown.

9. **INSTRUCTIONS: What Not a Jury Question.** An instruction requiring the jury to find not only that defendant was guilty of the alleged acts of negligence but also that the alleged acts were in fact in violation of some duty defendant owed to plaintiff, was submitting to the jury a question of law and added nothing to the plaintiff's case.

Appeal from Dunklin County Circuit Court—*Hon. W. S. C. Walker,* Judge.

REVERSED. ·

*W. F. Evans, Moses Whybark* and *A. P. Stewart* for appellants.

*Bradley & McKay* for respondent.

STURGIS, J.—Suit for personal injuries to a boy eleven years· of age, occasioned by his falling under the wheels of a stock car while same was being moved by hand in connection with loading some stock belonging to plaintiff's father at the station of Clarkton, in Dunklin County. Plaintiff had assisted his father in bringing the hogs to town and on arriving there they found another car loaded with stock standing at the chute of the stock pen. Two other cars were standing east of this one on the side track, one of which plaintiff's· father was to use in loading his stock. The local freight train had placed, or "spotted," the one car at the stock chute and then went on to Malden, whence it would return to Clarkton in about an hour. Malden was not on the main line and

the train went to that town on a branch line and then back to Clarkton and the evidence shows that when more than one car had to be placed at the cattle chute at Clarkton the train crew usually spotted one and then went on to Malden. When plaintiff's father found that the train had just gone and he would have to wait an hour or more in order to have the loaded car moved and his car placed in position to be loaded, the station agent suggested that they move these cars by hand so as to save time both in loading the stock and in getting the car out. To this plaintiff's father readily assented, and he, with his two boys, one being plaintiff, and his hired man, together with defendant's station agent, Elkins, proceeded to move these cars. They moved the loaded car away from the chute westward without any mishap, but in moving the first empty car in the same direction the plaintiff, while on the north side of the same near the front end, slipped and fell under the wheels, resulting in his arm being crushed and broken. For this injury the jury awarded him $1000 in damages.

The allegations of negligence in the petition and in plaintiff's instruction authorizing a finding for plaintiff are as follows: "The negligence of the agent or agents of the defendants in requesting or directing plaintiff to assist in moving a box car, (2) and in requesting or *permitting* plaintiff to go upon the north side of said box car out of the view of the station agent of defendants and the other there assisting in moving said box car for the purpose of assisting in moving said car, when the defendant knew the youth and inexperience of plaintiff, (3) the negligence and carelessness of the defendants in directing or *permitting* plaintiff to assist in moving a box car over and along a track, the ties of which extended above the ground, (4) and the failure of the defendants to spot or place the Dunscomb car with the engine before making trip to Malden."

## I.

We will note more at length the facts in evidence in connection with each ground of negligence specified,

Dunscomb v. Lusk et al.

though not following the same order as the pleader. First, as to the negligence of defendant's agent in directing or requesting plaintiff to assist in moving the box cars. The plaintiff was with his father and hired man for the purpose of helping to drive and load these hogs just as any eleven year old farm boy would do. There is little difference in the evidence as to what the agent did and said when plaintiff's father came to the depot and learned that the train had just gone and that these cars would have to be moved before the hogs could be loaded. Plaintiff's father testified that he was about to go up town when the agent said: "Could we spot that car and load that stuff?" Plaintiff's father at once assented and they all proceeded to move the cars by hand. It was shown to be a common thing for stockmen to move or assist in moving cars in this way and plaintiff's father had so helped at other times. It was near eleven o'clock and the reason for not wanting to wait until the train returned was to save time and get the hogs loaded before dinner and ready to go out as soon as the train returned. While plaintiff's father was under no obligation to move or help move the car in place to be loaded, it was an advantage to him and he readily agreed. Nothing was said to plaintiff and what he did was to merely follow along with his father ready to help as best he could. Certainly without more it was not negligence of the agent to permit this boy to accompany his father and to render such assistance as such a boy might under the immediate eye and care of his father. To so hold is to convict the father of even greater wrong.

## II.

The loaded car being hard to move, defendant's agent procured two crow bars commonly used to pull spikes and these were used as pinch bars under the hind wheels to move the car along. One was used by the hired man and plaintiff's father and the agent took turns in using the other. It appears that in doing this the pinch bars would slip on the rails and this boy,

plaintiff, commenced helping by placing a stick of wood
at the heel of the pinch bars, or "scotching" as it was
called.   Some stress is laid on the fact that the agent,
Elkins, picked up a block of wood and gave it to the
boy to use for this purpose, telling him to be careful not
to mash his fingers.   This agent says that when he did
this the boy was already using a stick for this purpose
which had become somewhat mashed, and he merely
gave him and told him to use the other.   We find no con-
tradiction of this.   The boy was helping both his father
and the agent in this way.

The plaintiff insists that this boy sustained the re-
lation to the father of helper and that defendant owed
him the same duty as it did the father and his hired
man—that of a licensee with interest, which we will note
later.   Since the boy owed the father the duty of service
and obedience, both law and morals imposed on the
father the duty to care for his son's safety.   Why, then,
should defendant's agent be called upon to stop the boy
from doing work which the facts show met the approval
of his father?   Moreover the plaintiff was not injured in
this particular work or in any way connected with it.
Its only force is that it gave the agent knowledge that
the boy was assisting in the work generally and bears
on the question of its being negligence *per se* in the
agent to *permit* the boy to do so.   We rule this point
against plaintiff.

### III.

We also rule that there is no negligence in defen-
dant's failure to have the train crew spot or place the
Dunscomb car at the stock chute before proceeding to
Malden.   Another car was placed there, though the evi-
dence does not show when it was loaded with reference to
the train's departure.   It is not shown that plaintiff's
father's hogs were to arrive or be loaded at any par-
ticular hour and when the train crew were ready to de-
part, these hogs had not yet arrived and the agent and
train crew could not know just when they would arrive.
The train would be back in an hour and plaintiff's

father could have declined to assist in moving the cars by hand and it would then have been up to the railroad to do this for him. There was no negligence in this respect and, if there was, it was so remote that it would be difficult to hold that such negligence was the proximate cause of plaintiff's injury.

## IV.

Another ground of negligence is that defendant's agent directed or *permitted* plaintiff to assist in moving cars along a track where the ends of the ties extended above the ground.. The place of the accident was on the loading switch some two hundred feet from the depot in a small town. It was shown that outside the immediate depot grounds the defendant's tracks generally were not so ballasted as to cover the entire ties but left the ends more or less exposed. It was shown that other railroads were so constructed, and we think it is common knowledge that most western railroads are constructed that way. We again, therefore, return to the question of its being negligence, without more, for the agent to permit (for that is all he did) this boy to accompany his father and assist in moving these cars on a track constructed in the usual way. The father evidently did not apprehend any danger and such as there was was as open and obvious to him as to the agent. It is casting more than ordinary care on defendant's agent if we hold that the agent is required to forbid the boy to accompany his father and assist under such conditions of defendant's tracks, because of the mere possibility that the boy might get so close to the side of the car as to stumble on the end of a tie and fall under the wheels.

## V.

This brings us to the last alleged ground of negligence in that defendant's agent required or *permitted* plaintiff to go to the north side of the box car *out of the agent's view* in moving the empty car when the agent knew the plaintiff's age and inexperience. The very statement of this ground of negligence strikes us as

placing on the agent the duty of watching over and keeping this boy within his sight and that, too, when the boy's father is there and the boy is there because of being his father's helper. What is there to call for this high degree of care on the part of the agent? The loaded car having been moved without mishap, the empty one was started by using the pinch bars in the way described. It was then found that this car could be kept moving by all hands pushing, including a couple of men who then happened along and volunteered a friendly push, and the pinch bars were discarded. The boy joined in the pushing but there was hardly room for all at the rear or east end of the car. The plaintiff testified that the agent "then told me to step up a little to the front of the car and I went up and got hold of the ladder on the north side at the west end and was pushing." He then slipped and fell under the wheels. We think it is evident from plaintiff's further evidence that his including his going to the front end of the car in what the agent said is a mere inference of his from the fact that plaintiff was virtually deprived of a place to push at the rear end. In his cross-examination he testified: "We put that block under the pinch bar to get it started and we lifted it up and it was going, and most of the men were on the back and that crowded me over, and he told me to step up and I went to the front of the car. I went on the same side I was already on and went to push. Q. He never told you to push the car, did he? A. I don't hardly remember whether he told me to do that or not. I remember he told me to put a block under the pinch bars, and I did that; I did that on the empty car until we got it started. After we got it started I don't remember his telling me anything more about pushing. We were already on the north side, and he told me to move up. I was already pushing and was doing this because he told me to. *He never told me to quit.* Q. Why did you go on the north side of the car? A. To kind of push. Q. Who told you to go? Well, nobody never told me to go on there, but he said to move up. Q. He didn't say what particu-

lar place to go, but he just told you to move up, is that
right? A. Yes, sir. Q. And you obeyed him? A. Yes,
sir. Q. You mean Mr. Elkins, he is the one that told
you to do this? A. Yes, sir. Q. You state that Mr.
Elkins just said 'move up'? A. Yes, sir. Q. And didn't
tell you to push? A. No, sir, he didn't tell me to do
nothing, but I was already pushing.'' Plaintiff's father,
who stood by the agent's side and could readily have
heard what was said, testified: ''Q. Was any orders
given him as to what he should do? A. I never heard
any, I was busy.'' And on cross-examination he said:
''He was on the west end of the north side of the car
and I was behind the car, the agent was on the outside
of the rail, and he and I were standing side by side. Q.
Who told the boy to go up there at the side? A. They
crowded him over from the east end and I didn't see
him any more. Q. Did the agent see him? A. I don't
know. Q. Did the agent say anything to him then? A.
Well, I don't remember. After we pushed him over to
one side he says 'get over that way a little.' Q. What
did he say at that time? A. He just told him to get
over that way—get over south—that was when he was
on the east end. I said nothing to the boy that I re-
member. We were all working there together.'' Plain-
tiff's other witness, the hired man, testified: ''The
agent directed all of us when and where to push and
he said 'push' and we of course pushed. From the
way we were pushing the car the boy was on the right
hand side of the car when he was hurt, that would be
the north side. I and the boy and the others were at the
east end of the car when we first went to pushing. When
the boy went around the car the agent was there pushing
with the rest.   .   .   .   Q. Did you hear the agent
tell the boy to go on the north side and push on the
car after he had quit scotching? A. He told the boy to
move and give him some room to push, and the boy moved
over and this is what he said: 'Move over and give
me some room in here to push.'   .   .   .   Dunscomb's
boy was first pushing in the middle and Elkins came
over and said let him in there.   .   .   .   Q. The agent

had nothing to do about sending the boy around the car, did he? A. I don't know. Q. Well, as a matter of fact, you don't know if he had anything to do with the boy going around the car or not, do you? A. I don't know. . . . That was the only order that Mr. Elkins gave the boy, he told him to keep up with the pinch bars at that time, until he told him to move over and let him push. Nobody else said anything to the boy but the agent. I remember what the agent said, but don't remember what anybody else said." The defendant's agent denied giving the boy any orders or directions in regard to his work except to give him a block to scotch with when they were using the pinch bars on the first car moved and to warn him not to mash his fingers; said that he knew nothing as to the boy's movements while they were pushing the second car until the boy halloed and he was discovered just after the wheel passed over him; that his father was right there and made no objection to what the boy was doing; that he never asked the boy to help but since he went along to help his father he did not tell him to quit. The other evidence corroborates the agent's version of the matter.

## VI.

We concede that plaintiff occupied much the same position with reference to his father as did the hired man and that plaintiff owed to the father the same duty of obedience and service as an employee, which duty the father could enforce, though not by the same penalty as with the hired servant. The recollections of our boyhood days do not fail us in this respect. This makes the relation of plaintiff to defendant that of the servant of one master who aids the servant of another master in work for the mutual benefit of both, or which both have an interest in having performed. Such servant is a licensee with an interest and when injured by the negligence of the servant whom he assists, the master of the servant must respond. The law is stated in Ryan v. Boiler Works, 68 Mo. App. 148, 151, as follows: "But it

is settled that one who in furtherance of his own interest or those of his master, assists the servants of another in the performance of their work, is neither a fellow servant of such servants nor a mere volunteer, but occupies a third position, namely, that of a licensee with an interest. He is not a trespasser, because he is lawfully in his place; he is not a fellow servant of the other servant, because he is not directly or indirectly retained or employed by the master of such servant; neither is he a bare volunteer, because he does the work to further his own interests or those of his master. When a person thus situated is injured through the negligence of the servant whom he assists, the doctrine of *respondeat superior* applies, and the master of the negligent servant is responsible for the injury.'' In the case of Ward v. Railroad (Tenn.), 38 S. W. 727, where a shipper's servant was engaged in loading a car on a side track, and at the invitation of a brakeman undertook to assist in moving the car to a point where it would be more easy of access, because the shipper's interest and his own would thus be served by expediting the loading, and while so assisting was injured by the railroad company's negligence, it was held that the defendant was liable, though it did not need the servant's assistance. [See, also, Tinkle v. Railroad, 212 Mo. 445, 469, 110 S. W. 1086; Railroad v. Marsh (Ohio), 52 L. R. A. 142.]

The difficulty with plaintiff's case is that the defendant or its agent is not shown to have been guilty of any negligence which would impose liability under the same rule of law which would prevail in case Dunscomb's hired man had been injured instead of his son. The defendant's agent did not fail to perform any duty toward plaintiff which the law inposed on him.

## VII.

Plaintiff's principal instruction sought to aid the weakness of his case by requiring the jury not only to find that defendant was guilty of the alleged acts of negligence but that ''said alleged acts on the part of

defendant were, in fact, in violation of some duty that defendant owed to plaintiff.'' This was submitted to the jury a question of law, since it is the province of the jury to find hypothetical facts and the question of whether such acts are violative of some duty owed by defendant to plaintiff was for the court, and not the jury. [Goodwin v. Railroad, 75 Mo. 73; Yarnall v. Railroad, 75 Mo. 575, 583; Joy v. Railroad (Ill.), 105 N. E. 330.] This additional finding, therefore, was improper and adds nothing to plaintiff's case.

It follows that the judgment is reversed.

*Farrington, J.,* concurs. *Robertson, P. J.,* concurs except as to paragraphs. VI and VII, holding as to paragraph VI that the injured boy was a mere volunteer and his father should have kept him out of danger.