[No. 26481. Department One. July 20, 1937.]

CARL BUSS, *Appellant,* KENNETH E. MARTIN *et al., Plaintiffs,* v. R. WACHSMITH *et al., Respondents and Cross-appellants.*[1]

[1]Reported in 70 P. (2d) 417.

674

*Harry L. Olson, Snively & Bounds,* and *John Gavin,* for appellant.

*Cheney & Hutcheson, Eugene D. Ivy,* and *Walter J. Robinson, Jr.,* for respondents and cross-appellants R. Wachsmith *et al.*

*D. V. Morthland, Cheney & Hutcheson,* and *Walter J. Robinson, Jr.,* for respondent and cross-appellant Richard Wachsmith, Jr.

GERAGHTY, J.—On the afternoon of September 17, 1935, Carl Buss, with Richard Wachsmith, Jr., the eighteen-year old son of R. Wachsmith and Mrs. Wachsmith, and two other employees, were engaged in hauling fruit from a warehouse on the father's farm to a freight car standing on a railroad siding on the north side of Fruitvale boulevard, an arterial way running westward out of Yakima.

Fruitvale boulevard has a twenty-foot concrete pavement. Wright avenue, a north and south local unpaved road, intersects the boulevard a few hundred feet east of where the freight car stood. The Wachsmith farm is on Wright avenue, north of the boulevard. The fruit was hauled from a warehouse on the farm to the freight car in a large truck driven by the son, Richard Wachsmith, Jr.

About 6:30 p. m., after transferring a truck load of fruit to the car, the son turned to the east, in the direction of the farm, for another load. He slowed down or stopped at a store, on the south side of the pavement, to enable one of the workmen, who had gone into the store to make a purchase, to get on the truck. Buss was sitting on the rear of the truck with his legs dangling.

As the truck approached the intersection, some 125 feet east of the store, at a speed of ten miles an hour, young Wachsmith made a turn to the north to enter Wright avenue. Before the intersection was cleared by the truck, a Ford coupe, driven by Elma Martin, wife of Kenneth E. Martin, collided with its rear end, severely crushing one of plaintiff's legs. The Martin car sustained some damages, but its occupants, Mrs. Martin and another lady, escaped injury.

Carl Buss and the Martins brought a single action against the Wachsmiths, parents and son, for recovery on account of the damages sustained by them; Buss

for personal injuries and the Martins for property damage.

In the first cause of action, it is alleged that, while plaintiff was riding on the rear of the truck after unloading the fruit in the course of his employment, Richard Wachsmith, Jr., drove suddenly to the left across the highway toward Wright avenue and in front of the oncoming car driven by Mrs. Martin, without giving any signal of his intention so to do, and without heeding oncoming traffic on the state highway; that the Martin car crashed against the rear of the truck, crushing the plaintiff's legs.

Paragraph three of the complaint, as amended, follows:

"That Richard Wachsmith, Jr., was at all the times mentioned in this complaint and is now a minor of the age of 18 years, living with his parents, the other two defendants, is being schooled, educated and supported by the said father and mother, the other two defendants, and that at the time mentioned in plaintiff's complaint, to wit; on the 17th day of September, in the evening thereof, and at the time of the collision between defendants' car and the plaintiff Martin's car, the said Richard Wachsmith Jr., was in sole control and care of said truck belonging to the defendants, and was operating the same for and on behalf of the said defendants and under the direction of the said defendants. That the said plaintiff, Buss, had no control or authority over said driver or over said truck of the said defendants, and that the said truck was used by the said defendants both in the business and pleasure of the said defendants, and each of them.

"That the said Richard Wachsmith, Jr., at the time mentioned in the complaint, to wit; at the time of the accident, was operating and driving said truck for the benefit and use of the defendants, and each of them."

The second cause of action is based upon damage to the Martin car.

The defendants, in their answer, after denial of the

material allegations of the complaint, alleged affirmatively that the accident was caused solely by the negligence of Mrs. Martin, in that she was driving at a high and excessive rate of speed on the left-hand side of the pavement and deliberately ran into the defendants' truck without in any manner attempting to avoid it, and without paying any attention to the rights of others in using the highway. They also pleaded the assumption by plaintiff of all risks incident to his employment.

The cause was tried to a jury. After the first witness had been called, the defendants R. Wachsmith and wife moved to dismiss the complaint of the plaintiff Buss as to them, for the reason that, upon its face, it showed that the negligence of Richard Wachsmith, Jr., if any existed, was that of a fellow servant. The motion was granted and the Buss action dismissed as to the parents.

The action proceeded to trial against all the defendants in respect of the Martin cause of action and of the Buss cause of action against the son. The jury returned a verdict in favor of plaintiff Buss for five thousand dollars against the son and a verdict for $165 against all the defendants in favor of the plaintiffs Martin. Motions for judgment notwithstanding the verdict and, in the alternative, for new trial were interposed by the defendants. The court set aside the verdict and dismissed the action against the son on the ground that Buss was riding on the truck as a licensee and was therefore debarred from recovery under chapter 18 of the 1933 Session Laws, p. 145 (Rem. Rev. Stat. (Sup.), § 6297-1 [P. C. § 196-57a] *et seq.*), the so-called host and guest law. The other motions were denied, and judgment on the verdict was entered in favor of the Martins.

Plaintiff Buss appeals from the judgment of dis-

missal. The defendants have cross-appealed from the judgment rendered against them in favor of the plaintiffs Martin.

The appellant Buss assigns as error, first, the order sustaining the objection of the respondents Wachsmith and wife to the admission of evidence against them and dismissing them from the action as to him; and second, the granting of the motion of the respondent Richard Wachsmith, Jr., for judgment notwithstanding the verdict.

The first assignment raises the issue whether the respondent Wachsmith, Jr., sustained the relation to the plaintiff of fellow servant or whether the son was a vice-principal of the parents in the management and driving of the truck.

In *Frengen v. Stone & Webster Eng. Corp.*, 66 Wash. 204, 119 Pac. 193, we said:

"The fellow servant rule is not a popular one with this court, and we have heretofore refused to make it the basis for defeating recovery for an injured workman except in those cases where it was so plainly applicable that, to the majority of the court, there seemed no escape unless the doctrine was to be entirely abrogated and written out of the law of this state."

And so we have, in the spirit of this declaration, recognized distinctions in the relations of the employees of a common master that tend to soften the rigor of the rule as it was originally formulated by the courts.

We have said that fellow workmen may be fellow servants in regard to some particular part of the employment and that, as to other parts of the employment, the fellow workman may stand in the relation of vice-principal to the others, depending entirely upon what is being done at the time. *Sroufe v. Moran Bros. Co.*, 28 Wash. 381, 68 Pac. 896, 92 Am. St. 847, 58 L.

R. A. 313. *Frengen v. Stone & Webster Eng. Corp.,* *supra.*

In *Dyer v. Union Iron Works,* 64 Wash. 577, 117 Pac. 387, it was held that a blacksmith, having sole charge and control of a steam hammer, with two helpers, was a vice-principal and not a fellow servant. In the course of its opinion, the court said:

"In support of its contention that the blacksmith and the respondent were fellow servants, the appellant has cited a long line of cases from other jurisdictions presenting a state of facts similar to the facts in the case at bar and holding thereon that the employees so situated bore the relation of fellow servants. But this court has heretofore refused to follow the rule of these cases. We have held that where a master employs a number of servants to work with a dangerous agency and gives to one servant exclusive control of the agency with power to direct where the other servants shall work and the manner in which they shall work, the one given control is the representative of the master, that his negligence is the negligence of the master, and any one injured by reason of such negligence, not contributed to by him, has a cause of action against the master for the injury so suffered. *O'Brien v. Page Lumber Co.,* 39 Wash. 537, 82 Pac. 114; *Dossett v. St. Paul & Tacoma Lum. Co.,* 40 Wash. 276, 82 Pac. 273; *Westerlund v. Hothschild,* 53 Wash. 626, 102 Pac. 765; *Eidner v. Three Lakes Lumber Co.,* 45 Wash. 323, 88 Pac. 326. The facts bring the present case within this rule. The blacksmith, Allison, had sole charge of the steam hammer, and if he put it into motion while the respondent was in a dangerous situation and thereby caused an injury to the respondent, his act was that of a vice principal of the master and not a fellow servant of the respondent."

In *O'Brien v. Page Lumber Co.,* 39 Wash. 537, 82 Pac. 114, it was held that a sawyer, while a fellow servant with the members of the crew in respect to their labor in working together in the common employment of converting logs into lumber, was, nevertheless, a

vice-principal in respect to the safety of the appliances under his charge.

While, in the case before us, it is not alleged in the complaint that the son exercised any authority in directing the work of the other members of the crew, he was in exclusive control of the truck on which the men were riding. They had no voice in directing him nor any control over his movements. He was operating the truck as his father's *alter ego* in the performance of a nondelegable duty. In the language of *Dossett v. St. Paul & Tacoma Lumber Co.*, 40 Wash. 276, 82 Pac. 273:

"To hold otherwise would relieve the master of his duty to furnish a reasonably safe place for a servant, and would permit a superior servant in control to take the life or limb of such inferior servant, without an opportunity for self-protection or escape. Neither the law nor the dictates of humanity permit such results. [Citing cases.]"

The case of *Brabon v. Seattle*, 29 Wash. 6, 69 Pac. 365, frequently cited, was one where a city fireman was killed while on the way to a fire by the overturning of a hose cart on which he was riding. The driver of the hose cart, a fellow fireman, turned into an ungraded street, where he ran onto a root extending from a stump on the side of the traveled way partially across the track. After disposing adversely of the city's first contention that the evidence failed to show that it had graded the street or had otherwise attempted to improve it for public travel, and was, therefore, not liable for injuries caused by defects therein, the court continues:

"It is next said that the court erred in refusing to instruct the jury that, if the accident occurred because of the negligence of the driver of the hose cart, the respondents could not recover. But we fail to find any evidence in the record upon which to predicate such an

instruction. It was not shown that Brabon had any power or authority to direct either the speed at which the cart should be driven or the course to be taken by the driver, or that he had any control over the driver whatsoever. Nor was it shown that the negligence of the driver was the sole or the proximate cause of the injury. If there were negligence on the part of the driver at all, it consisted in his failure to discover the root in time to avoid it, or, perhaps, his mistaken belief that the cart would safely pass over it at the speed at which he was going. In either event it was the combined negligence of both the driver and the city which caused the injury, and neither can plead the negligence of the other to avoid liability. *It is not a case of negligence of a fellow servant. Brabon and the driver were not fellow servants, and the driver's negligence cannot be imputed to Brabon.*" (Italics ours.)

In *Leland v. Chehalis Lumber Co.*, 68 Wash. 632, 123 Pac. 1086, where a common laborer was riding on a wagon to assist in holding a heavy drum, the trial court gave the following instruction:

" 'You are further instructed that, if you believe from the evidence that plaintiff in the discharge of his duties to the defendant as a common laborer was at and just prior to the alleged injury riding in a wagon drawn by a team and driven by another, and that plaintiff exercised and assumed no authority over the person so driving or over the movements of the team, then any negligence on the part of the person driving, if any has been shown, cannot be imputed or charged to the plaintiff.' "

Commenting on this instruction, the court said:

"The instruction above quoted in substance told the jury that, if they found that the plaintiff had no control over the driver, then the negligence of the driver cannot be imputed to the plaintiff. In so far as the loading and unloading of the drum was concerned, the plaintiff and the driver of the wagon no doubt were fellow servants, but we find nothing to indicate that these two persons were fellow servants in the driving

of the team. If they were not fellow servants, then the instruction was right."

If the drivers of the vehicles in the two preceding cases were not fellow servants of the employees riding with them, with greater reason can it be said that the driver of a motor truck cannot be so classified.

In *Mercer v. Lloyd Transfer Co.*, 59 Wash. 560, 110 Pac. 389, a case cited by respondents, an employee injured while riding on a truck was held to be a fellow servant to the driver. But the injury resulted from the improper loading of heavy iron plates on the truck, an operation in which the injured man participated with the driver. The court said:

"Respondent and the driver were both experienced men, were engaged as fellow servants in performing the common work of loading. If either or both of them made a mistake and were guilty of negligence, the master cannot be held liable in the absence of negligence on its part."

The distinction between that case and the case at bar is obvious.

The appellant contends that, irrespective of the fellow servant rule, the allegations of the pleadings were broad enough to bring the case under the family car doctrine announced in *Birch v. Abercrombie*, 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N. S.) 59. We see no basis for this contention. That doctrine is but an extension of the principle of *respondeat superior* to the relation created by the operation of a family use car. Where a car is maintained for that use, and at the time of the accident is so used, with the express or implied consent of the owner, the law presumes that the relation of master and servant existed in the operation of the car, subjecting the parent or master to liability upon the principle of *respondeat superior*.

In the present case, it being conceded by the

parties that Wachsmith, Jr., was engaged in his father's business, there is no necessity for invoking the family car doctrine. The question for solution is whether the negligence resulting in the injury was that of a fellow servant, in the strict sense of the term, or the agent or vice-principal of the father. On this question, we are constrained to hold that the son was the immediate representative and vice-principal of the father in the operation of the truck at the time of the accident, and that the appellant was not chargeable with his negligence.

Was the appellant a "licensee" within the terms of chapter 18 of the 1933 Session Laws, p. 145? Section one of that act, p. 145, provides:

"No person transported by the owner or operator of a motor vehicle as an invited guest or licensee without payment for such transportation shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator." (Rem. Rev. Stat. (Sup.) § 6297-1 [P. C. § 196-57a].)

The validity of this statute was upheld in *Shea v. Olson*, 185 Wash. 143, 53 P. (2d) 615.

The respondents rest their contention on the broad implications of the word "licensee." The statute defines neither "guest" nor "licensee," although the phrase "without payment for such transportation" indicates that gratuitous carriage is intended.

The servant, in the occupancy of the master's premises or appliances, is not a licensee. He occupies the premises or uses the appliances in virtue of his contract of employment and as necessary to the rendition of the service for which he is employed.

In the case at bar, the appellant was riding upon the truck in the performance of the duties for which he was employed. The nature of the employment re-

quired that, after loading the truck with fruit at the warehouse, he be transported to the freight car to assist in unloading, and then transported back to the warehouse to renew the operation. It was to the employer's profit to transport him from one place to the other, and the furnishing of this transportation entered into the contract of employment. It was not furnished solely for the benefit of appellant.

"A licensee is a person who is neither a passenger, servant, nor trespasser and not standing in any contractual relation with the owner of the premises, and is permitted to come upon the premises for his own interest, convenience, or gratification." 29 Cyc. 451.

The term is defined in Blashfield's Cyclopedia of Automobile Law and Practice, § 2295, as

"one who, at his own suggestion and purely for his own purposes, accompanies the operator of a motor vehicle on a journey with the latter's acquiescence. . . ."

The same author, in speaking of guests, says in § 2292:

"Where, for example, some such relation as that of master and servant exists between the passenger and the operator, as the result of which tangible benefits accrue to the latter from the transportation, by saving the servant's time or facilitating his work, the passenger is not a guest within the meaning of the statute."

By like reasoning, the servant is not a licensee within the meaning of our statute.

In *Knutson v. Lurie*, 217 Iowa 192, 251 N. W. 147, speaking of the host and guest law there involved, the Iowa court said:

"Undoubtedly it is the theory of the cases that when the relationship of master and servant exists between the passenger and the operator of the car, the transportation is for the mutual benefit of both."

In its memorandum opinion, the trial court cited *Dunscomb v. Lusk,* 195 Mo. App. 344, 190 S. W. 397, and *Kelly v. Tyra,* 103 Minn. 176, 114 N. W. 750, 115 N. W. 636, 17 L. R. A. (N. S.) 334. These cases cannot be said to be pertinent here. The problem with which the courts were dealing in those cases was how to characterize the status of the servant of one master assisting the servants of another in the performance of their work.

In *Dunscomb v. Lusk,* the court quoted a statement of the law as given in *Ryan v. Boiler Works,* 68 Mo. App. 148, as follows:

" 'But it is settled that one who in furtherance of his own interests or those of his master, assists the servants of another in the performance of their work, is neither a fellow servant of such servants nor a mere volunteer, but occupies a third position, namely, that of a licensee with an interest. He is not a trespasser, because he is lawfully in his place; he is not a fellow servant of the other servant, because he is not directly or indirectly retained or employed by the master of such servant; neither is he a bare volunteer, because he does the work to further his own interests or those of his master. When a person thus situated is injured through the negligence of the servant whom he assists, the doctrine of *respondeat superior* applies, and the master of the negligent servant is responsible for the injury.' "

Here, we are not concerned with the problem before the court in those cases, because the appellant was doing his master's work and, when injured, was occupying the place assigned him.

The appellant, not being a licensee of the father, did not sustain the relation of licensee to the son. Being rightfully on the truck under his contract of employment, appellant could maintain an action against the son for negligent driving of the vehicle. *Dahl v. Moore,*

161 Wash. 503, 297 Pac. 218; *McGuire v. Armstrong,* 268 Mich. 152, 255 N. W. 745.

■ In support of their cross-appeal, the respondents—parents and son—contend, in the first place, that the son was free of negligence in the operation of the truck, and, secondly, that Mrs. Martin was guilty of such contributory negligence as barred a recovery.

The drivers of the vehicles gave conflicting versions of the circumstances surrounding the collision, and the testimony of the other witnesses was likewise in conflict. The jury might have found for either side, depending upon their view of the credibility of the witnesses.

Under the rule applicable to motions for directed verdict or judgment notwithstanding the verdict, the appellant's evidence leaves no room to question its sufficiency to carry the case to the jury.

■ Reference may be made here to the contention of Wachsmith, Jr., that the order granting judgment notwithstanding the verdict is sustainable on the ground that the appellant Buss was guilty of contributory negligence in riding upon the rear of the truck with his legs dangling. The four members of the crew could not all ride in the cab. There were no seats on the bed of the truck. One of the men stood up, steadying himself by holding onto the seat. Appellant took the more restful position on the rear of the truck. His position in no way contributed to the collision.

Disposing of a like contention in the case of *Crane Co. v. Mathes,* 42 F. (2d) 215, the circuit court of the fifth district said:

"There was evidence tending to show that the truck upon which appellee was riding was covered with a wide platform, and that at the time of his injury he was seated on the platform at the front end of the truck with his legs dangling. It is argued that he should have been seated in the cab of the truck or have

been on the truck back of the cab; that, if he had been so located, he would not have been injured; that this constituted contributory negligence and was the proximate cause of the injury. This argument is without merit. Appellee had the right to be on his employer's truck, and his position was safe enough if the collision had not occurred. The questions of negligence and contributory negligence were properly left to the jury."

■ Finally, the cross-appellants, on their appeal from the judgment in favor of the Martins for property damage, urged that certain instructions given by the court were erroneous. We think the objection to the instructions without merit. The instructions given as a whole correctly covered the issues. Even if the language employed was subject to technical criticism on the grounds urged by the cross-appellants, the jury could not have been prejudiced by it.

The judgment in favor of the respondents Martin is affirmed. The cause is remanded to the superior court in respect of the appellant's cause of action against the Wachsmiths, with direction that, as to Richard Wachsmith, Jr., the motion for judgment notwithstanding the verdict be denied and judgment entered on the verdict; and that, as to the appellant's action against R. Wachsmith, Sr., and Mrs. Wachsmith, his wife, further proceedings be had in accordance with this opinion.

BLAKE, MAIN, and ROBINSON, JJ., concur.

STEINERT, C. J. (dissenting in part)—With reference to the liability of R. Wachsmith and wife, I disagree with the majority on the first and principal question discussed in the prevailing opinion, namely, whether the respondent Wachsmith, Jr., the son,

" . . . sustained the relation to the plaintiff of fellow servant or whether the son was a vice-principal of the parents in the management and driving of the truck."

Upon that question, the substance of the majority opinion is contained in the following language:

"While, in the case before us, it is not alleged in the complaint that the son exercised any authority in directing the work of the other members of the crew, he was in exclusive control of the truck on which the men were riding. They had no voice in directing him nor any control over his movements. He was operating the truck as his father's *alter ego* in the performance of a nondelegable duty."

It is clear, from this language, that the majority holds that the son was, at the time in question, the vice-principal of his father and was then engaged in performing a nondelegable duty. It is not entirely clear to me, however, whether the son is held to be a vice-principal because he was a superior servant, or because he was at the time engaged in the performance of a nondelegable duty, or because of both conditions combined. In any event, I do not believe that either the facts herein or the law applicable thereto support the conclusion, as I shall endeavor to show.

The fellow servant rule, grounded in the doctrine of common employment, may be stated in its simplest form as follows:

"A master is not bound to indemnify one servant for injuries caused by the negligence of another servant in the same common employment as himself, unless the negligent servant was the master's representative." 4 Labatt's Master & Servant (2d ed.), p. 4007, § 1393.

Stated somewhat more expansively and in the light of judicial expression on the subject, the import of the doctrine has been comprehensively set forth in 18 R. C. L., Master and Servant, p. 712 *et seq.*, § 193, as follows:

"Perhaps no general principle of law has been more firmly established than that a master or employer is

not responsible to those engaged in his employment for injuries suffered by them as the result of the negligence, carelessness, or misconduct of other servants of the same employer, engaged in the same common or general service or employment. If the employer has provided safe and suitable tools, machinery and appliances, in accordance with the duty imposed upon him by law, he is not to be held accountable for an injury resulting to one of his employees from the misuse or nonuse of the instrumentalities by another employee. Again, if an employer furnishes his employees with appliances and materials of suitable quality and in sufficient quantity to enable them to do a particular piece of work safely, he is not liable for an injury which results from the use of defective material or a defective appliance selected by a fellow employee. Nor may a violation of rules by a fellow employee be made the foundation of liability on the part of the employer. Similarly, the failure of an employee, in performing the work which he is directed to do, to give a fellow employee warning when doing an act which may endanger him, is not a fault attributable to the employer."

The rationale of the doctrine of common employment has been rested on various grounds, as follows: (a) that the master is liable to his servant only for his failure to do what he has contracted to do; (b) that the standard of care which fixes the limits of the master's obligations is fully satisfied when he provides a reasonably safe place of work, reasonably safe and suitable tools, appliances and machinery, and reasonably competent employees; (c) that the risk of injury through the negligence of a co-servant is a peril incident to the employment and is accepted as such by the employee, and (d) that a contract by the employee to accept the risks of a fellow servant's negligence may properly be implied on the ground of expediency and public policy, in that the opportunities of the employee for self-protection are greater than

the employer's opportunity for prevention of injuries, and that the tendency of the doctrine is to make the servant more cautious in performing his duties, and, likewise, more watchful of his fellow servant in the discharge of his duties.

Whatever may be the sounder and basic reason for the doctrine, there can be no doubt that the rule is firmly established in this state, and in practically all of the states of the Union. While the doctrine has been increasingly restricted to meet changing economic conditions, and has even been declared by this court to be an "unpopular" rule herein, it has never been wholly abrogated in this state. In fact, we have specifically said, in *Frengen v. Stone & Webster Eng. Corp.*, 66 Wash. 204 (211), 119 Pac. 193, on which the majority relies, that, if the doctrine is to be entirely abrogated and written out of the books, "it must be done by the legislature, and not by the courts." In that very case, too, it may be added, the judgment in favor of the injured employee was reversed because the fellow servant rule was held to apply.

It is well known, of course, that in many respects the rule has been modified in this state by statute. I need mention only the factory act and the workmen's compensation act as forceful illustrations. Neither of those acts, however, nor any other of similar import, is invoked here. The particular question now before us is simply whether the rule under consideration has any application to, or effect upon, the state of facts here involved.

Now, what are the facts in this case? As shown by the record, the appellant was employed by R. Wachsmith and wife upon the Wachsmith fruit ranch from December, 1934, to September, 1935, the day on which the accident occurred. His work consisted variously of pruning, irrigating, assisting in the hauling

of fruit, and other odd jobs. On September 17, 1935, appellant and three others, including respondent Richard Wachsmith, Jr., were engaged in hauling apples from the warehouse located on the Wachsmith ranch to a railroad siding some distance away. The four men loaded the apples into a truck at the warehouse, then drove or rode in the truck over a county road to the siding where the fruit was unloaded into a freight car, and thereupon returned with the empty truck to the ranch for the next load. Upon these trips, the truck was driven by Richard Wachsmith, Jr.; the other men rode back and forth with him in order to load and unload. It is not disputed that appellant Buss was in the course of his employment during all of this time.

On one of the return trips, the truck, while making a left turn at a road intersection, was struck in the rear by an overtaking car. As a result of the collision, appellant, who was seated in the back end of the truck with his legs dangling over the edge, was severely injured. It will be assumed, in accordance with the effect of the jury's verdict, that the driver of the truck, Richard Wachsmith, Jr., was negligent in failing to give a timely or proper signal of his intention to turn.

Now, in the light of these facts, what was the duty owing by R. Wachsmith and wife, the parents of Richard Wachsmith, Jr., to appellant, what was the employment relationship between the senior and junior Wachsmiths, and what was the status of the appellant with relation to the younger Wachsmith? All of these questions are interrelated and may be considered together and with two concepts in mind, namely, that of vice-principalship and that of nondelegable duties to be performed by the employer.

It may at once be conceded that the senior Wachsmiths owed the appellant the duty of providing a

safe place to work, reasonably safe and suitable tools, appliances and machinery in the work, and reasonably competent employees.

No complaint is made of the place of work or of the appliances and instrumentality used. The only complaint that appellant makes relates to the driver of the truck, who was an employee. There is no contention, however, that the driver was generally incompetent or that he was known to be, or ever gave any evidence of being, generally negligent. The only complaint as to him goes to a single act of negligence. If liability of the employer to an injured employee springs automatically from the negligence of every employee, then the employer becomes an insurer, and there can be no escape under any circumstances whatever. That, in my opinion, is not the law in this state.

As to the employment relationship between the senior and junior Wachsmiths, there is nothing in the record suggestive of vice-principalship. There is no evidence that Wachsmith, Jr., exercised, or had the power to exercise, any authority whatever over appellant. The majority, apparently conceding this, stresses the fact that the driver was in exclusive control of the truck and that appellant had no voice in directing him, from which it is concluded that Richard Wachsmith, Jr., "was operating the truck as his father's *alter ego* in the performance of a nondelegable duty." Assuming the premise to be true, the conclusion does not inevitably, or even directly, follow.

Whether a negligent employee is, at a given time, a vice-principal, is determined by the *nature* of the functions which, as a matter of fact, he is discharging at the time when the injury is inflicted. Wholly aside from the specific act which the negligent employee may be performing, he must, in order to stand in the place of a vice-principal, have the *power* of control or

supervision over his co-employee. 39 C. J. 574, § 691; R. C. L. 748, § 218. As stated in *Allend v. Spokane Falls & N. R. Co.*, 21 Wash. 324 (338), 58 Pac. 244 (248), "the power of superintendence and control is the test." This does not mean merely the control by an employee over an instrumentality, as the majority seems to indicate, but rather the power to direct and supervise the workmen and the work. The driver of the truck was, of course, in control of the truck in that he was operating it. But he had no more control over his co-employees than they had over him.

Lastly, the relationship of the appellant to Richard Wachsmith, Jr., was simply that sustained by two individuals in a common employment. They were both employees and were commonly employed in hauling apples from a warehouse to a freight car. Loading the apples, transporting them over the highway, and unloading them into a freight car comprised a chain of acts incidental and necessary to the common employment. Appellant's work did not cease when he had loaded or unloaded a particular lot of apples; nor did the driver's work begin or end with the mere operation of the truck. The work of hauling included loading, transporting, unloading, and returning. The act of driving the truck was no more a nondelegable duty than that of loading or unloading, and in none of these connected operations did any of the employees exercise control, direction or supervision over the others. Each was doing his task necessary to the complete performance of the work to which all had been assigned, namely, that of delivering the apples from one point to another.

Brief reference will now be made to the authorities relied on by the majority.

*Frengen v. Stone & Webster Eng. Corp.*, 66 Wash. 204, 119 Pac. 193, has already been noted. In that

case, the fellow servant rule, though held not to be a popular one in this court, was nevertheless made the basis of the decision denying recovery.

In *Sroufe v. Moran Bros. Co.*, 28 Wash. 381 (385), 68 Pac. 896 (897), 92 Am. St. 847, 58 L. R. A. 313 (315), it appears that a foreman had *full direction and control* of the men working in and upon a certain shipyard and vessel. The foreman directed an employee to take a certain position in the work of raising and lowering a cant. An improper signal given, or transmitted by, the foreman resulted in the cant being allowed to slip and fall, as the result of which the employee was injured. Since the foreman stood in the position of vice-principal, with the power of control and direction over the workman, and since the work necessitated the giving of required signals which it was the duty of the *foreman* to give, the master properly was held liable.

In *Dyer v. Union Iron Works*, 64 Wash. 577, 117 Pac. 387, a blacksmith's helper

" . . . received his orders from the blacksmith under whom he was working, both as to the character of work he should do and as to the manner in which he should perform it."

In holding the master liable for the act of the blacksmith in putting a steam hammer in operation while the helper was in a dangerous position, this court said:

"We have held that where a master employs a number of servants to work with a dangerous agency and gives to one servant exclusive control of the agency with power to direct where the other servants shall work and the manner in which they shall work, the one given control is the representative of the master, that his negligence is the negligence of the master, and any one injured by reason of such negligence, not contributed to by him, has a cause of action against the master for the injury so suffered. [Citing cases.]"

Obviously, the decision was correct.

In *O'Brien v. Page Lumber Co.,* 39 Wash. 537, 82 Pac. 114, it was held that a sawyer in control of a saw crew *who were bound to obey his orders,* was a vice-principal as to the duty of giving warning that he was about to operate a powerful machine at a time when one of the crew was in dangerous proximity thereto. Manifestly, that decision was correct.

*Dossett v. St. Paul & Tacoma Lumber Co.,* 40 Wash. 276, 82 Pac. 273, was "a case similar in all its essential features" to the *O'Brien* case, and, naturally, a similar result was reached.

The two cases of *Brabon v. Seattle,* 29 Wash. 6, 69 Pac. 365; and *Leland v. Chehalis Lumber Co.,* 68 Wash. 632, 123 Pac. 1086, present points of similarity to each other and, to some extent, a similarity to the case now before us. There is, concededly, some language in both of those cases which, upon its face, may be taken as favorable to the majority opinion in respect to the fellow servant rule. However, the expressions therein used were purely *obiter dicta,* as a reading of the cases will disclose.

In the *Brabon* case, the decision was rested squarely on the failure of the city of Seattle to maintain one of its streets in a reasonably safe condition, and, as the court held, whether such negligence was the sole negligence of the city or whether it combined with the negligence of the driver, was immaterial so far as the liability of the city was concerned. The city was liable in any event. The court did not determine whether the driver of the cart involved therein was negligent, but, upon the assumption that he might have been, held that the city was, nevertheless, liable for its own negligence. It might also be noted that, in that case, it was shown that it was the duty of the driver of the cart to select the route, and that he had

selected an ungraded street. We have no such situation here.

The *Leland* case is even less controlling, for there the decision was predicated squarely and solely upon the failure of the employer to maintain its private road in a reasonably safe condition. The opinion expressly holds that no negligence on the part of the driver had been shown, and hence any reference in the case to fellow servants or the fellow servant rule was unnecessary and *obiter dictum.*

The cases cited by the majority do not, in my opinion, support a holding that Richard Wachsmith, Jr., was a vice-principal merely because he happened to be operating the truck at the time. His duty was but part of the general duty of all those then commonly engaged, namely, the duty of hauling apples. Since they were all so engaged, they were fellow servants.

I can see nothing that the senior Wachsmiths did or failed to do which should render them liable to appellant. As to them, I think that the judgment of the court dismissing the action should be affirmed.